71 P.3d 616 (2003)
2003 UT App 154
STATE of Utah, in the interest of R.H. and C.H., persons under eighteen years of age.
D.H., Appellant,
v.
State of Utah, Appellee.
No. 20020691-CA.
Court of Appeals of Utah.
May 22, 2003.
*617 Justin Gary Jensen, Draper, for Appellant.
Mark L. Shurtleff, Attorney Generals Office, and Carol L. Verdoia, Assistant Attorney General, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before Judges BILLINGS, BENCH, and GREENWOOD.

OPINION
BILLINGS, Associate Presiding Judge:
¶ 1 D.H. appeals the decision of the Third District Juvenile Court terminating his parental rights to his two children. We affirm.

BACKGROUND
¶ 2 D.H. is the natural father of eleven-year-old R.H. and nine-year-old C.H. (the children). On January 15, 1998, the Division *618 of Child and Family Services (DCFS) received a referral alleging physical abuse and physical neglect of the children by N.H., their natural mother (the mother).[1] At the time, D.H. was incarcerated. DCFS subsequently removed the children from their home in January 1998.
¶ 3 On February 27, 1998, the State of Utah filed a Verified Petition with the juvenile court seeking protective supervision of the children alleging they were abused and/or neglected. On August 26, 1998, the juvenile court found D.H. was unable to care for the children, as he was incarcerated, and found the children were neglected pursuant to Utah Code Ann. § 78-3a-103 (1998). The juvenile court ordered DCFS to maintain protective supervision services over the children until such time as the mother submitted to psychological evaluation and both parents submitted to drug and alcohol assessments. The children were eventually returned to their parents in June 1999, following the juvenile court's Order for Termination of Jurisdiction and Services.
¶ 4 Less than three months later, in September 1999, the children were returned to the custody of DCFS, as the mother was apparently homeless and D.H. had returned to jail. Later that month, the State filed a Second Verified Petition renewing allegations of neglect, again praying the juvenile court would award temporary custody and guardianship of the children to DCFS. On February 15, 2000, the juvenile court partially adjudicated the Second Verified Petition. The juvenile court continued the matter until March 13, 2000, when it ordered that the children remain in the custody of DCFS, that DCFS provide a Reunification Service Plan, and that the Assistant Attorney General be allowed to file a supplemental petition. On December 27, 2000, the State filed a Verified Petition praying the juvenile court permanently terminate the parental rights of both the mother and D.H.
¶ 5 On September 8, 1999, the court appointed the firm of Laherty and Associates to represent D.H. Between that time and July 1, 2002, Mr. Laherty appeared on behalf of D.H. on nine occasions. During the same period, three of Mr. Laherty's associates represented D.H. on five other occasions. D.H. did not object to the effectiveness of his counsel during this period, save for one occasion.
¶ 6 On February 6, 2002, Mr. Laherty failed to appear at a pre-trial hearing. The juvenile court noted Mr. Laherty's absence, and D.H. indicated he was considering requesting new counsel as he felt Mr. Laherty was too difficult to reach. The juvenile court ordered D.H. to notify the court within thirty days if he intended to discharge Mr. Laherty as counsel. D.H. never filed a notice of discharge, and Mr. Laherty appeared on behalf of D.H. in later proceedings.
¶ 7 Trial was held on the Petition for Termination of Parental Rights on July 1, 2002. D.H. was again incarcerated at the time of trial. An associate from Mr. Laherty's office, Mr. Pietryga, represented D.H. at the proceeding. At the commencement of the trial, D.H. expressed his desire to have new counsel appointed, and through counsel motioned accordingly:
D.H.: Your Honor, I'd like to relinquish counsel at this time. I want to be appointed new counsel.
THE COURT: You've got appointed counsel. There is no reason for
D.H.: Mr. Laherty isn't here to represent me. He's been here, isn't this four times now, and now I don't even know who this person is. He hasn't seen the case and now he's representing me in the trial case?
THE COURT: Well, Mr. Pietryga is perfectly qualified to represent you. He's an associate of Mr. Laherty. I don't see any reason that he can'the can't represent you in this matter.
MR. PIETRYGA: And, Judge, I apologize for that. He actually had two motions. He wanted one to continue to confer with counsel again, and his next motion was to have new counsel appointed to him.
THE COURT: We've continued this matter, literally, for years at this point and I'm not going to continue. And, frankly, *619 Mr. H., I don't see any reason that Mr. Pietryga can't represent your interest just fine here. So those motions will be denied.
¶ 8 At the conclusion of the trial, the juvenile court permanently terminated D.H.'s parental rights to the children, pursuant to Utah Code Ann. §§ 78-3a-407(2), (4), (5), and (8) (Supp.2000). D.H. now appeals the juvenile court's order terminating his parental rights.

ISSUES AND STANDARDS OF REVIEW
¶ 9 D.H. asserts the juvenile court abused its discretion when it failed to inquire into his complaints regarding his court-appointed counsel before denying him substitute counsel. "Whether to appoint a different lawyer for an indigent defendant who expresses dissatisfaction with his court-appointed counsel ... is a matter committed to the sound discretion of the trial court and will be reversed only for an abuse of discretion." State v. Pursifell, 746 P.2d 270, 272 (Utah Ct.App.1987).
¶ 10 Next, D.H. argues the juvenile court failed to make findings required by the amended version of Utah Code Ann. § 78-3a-407 (Termination Statute), effective May 6, 2002, in its order terminating D.H.'s parental rights. "The juvenile court's decision concerning which version of the [T]ermination [S]tatute applied is a matter of statutory interpretation, which presents a question[ ] of law which we review for correctness, according no particular deference to the [juvenile] court's interpretation." In re S.Y., 2003 UT App 66,¶ 10, 66 P.3d 601 (third and fourth alterations in original) (quotations and citations omitted). "However, where a party ... fails to bring an issue to the [juvenile] court's attention, that party is barred from asserting it on appeal absent a showing of exceptional circumstances or plain error." Id. (alteration in original) (quotations and citation omitted).

ANALYSIS

I. Juvenile Court's Duty to Inquire
¶ 11 D.H. argues the juvenile court abused its discretion by not inquiring into his complaints regarding his court-appointed counsel before denying his motion for substitute counsel. The right to counsel in parental termination proceedings is granted pursuant to Utah Code Ann. § 78-3a-913(1)(a) (Supp.2001). The statute mandates that in juvenile proceedings "[t]he parents, guardian, custodian, and the minor, if competent, shall be informed that they have the right to be represented by counsel at every stage of the proceedings.... [I]f any of them requests an attorney and is found by the court to be indigent, counsel shall be appointed by the court." Id. Interpreting section 78-3a-913(1)(a), this court has held, "[I]ndigent parents facing the permanent deprivation of their parental rights are entitled not only to an appointed attorney, but to the effective assistance of counsel." In re C.C., 2002 UT App 149,¶ 7, 48 P.3d 244; see In re E.H., 880 P.2d 11, 13 (Utah Ct.App.1994). "An integral part of the right to the effective assistance of counsel is the opportunity to have substitute counsel appointed when necessary and, to that end, to have the court explore a party's complaints regarding the assistance his or her attorney has provided to determine if substitute counsel is indeed necessary." In re C.C., 2002 UT App 149 at ¶ 9, 48 P.3d 244. "In failing to fully investigate a parent's expressed discontent, a court risks denying that parent his or her right to adequate representation." Id. Accordingly, "for the statutorily-provided right to counsel in termination proceedings to be meaningful, juvenile courts ... must explore whether there is any validity to an indigent parent's expressed complaints and determine whether the parent's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution." Id. at ¶ 10 (quotations and citation omitted). Moreover, "[t]his [inquiry] must be done even when the [juvenile court] judge suspects that the [party]'s requests are disingenuous and designed solely to manipulate the judicial process and delay the trial." Id. (quotations and citations omitted).
¶ 12 We conclude the juvenile court in this case did not satisfy its duty to inquire. The record indicates D.H. complained that Mr. Laherty was not present to represent *620 him, that he had not previously met Mr. Pietryga, and that Mr. Pietryga was not familiar with the case. Without any inquiry, the juvenile court denied D.H.'s motion for substitution of counsel, asserting Mr. Pietryga was well-qualified and capable of representing D.H.'s interests. The State insists no further inquiry was necessary as D.H.'s complaints and request for substitute counsel rested solely on his desire for Mr. Laherty to personally represent him at trial.
¶ 13 As previously mentioned, an indigent defendant in a termination of parental rights case enjoys a statutory entitlement to effective court-appointed counsel. However, this statutory protection does not afford the defendant the right to choose which specific attorney will represent him. See State v. Bakalov, 1999 UT 45,¶¶ 19-20, 979 P.2d 799; State v. Pursifell, 746 P.2d 270, 272 (Utah Ct.App.1987). If the record clearly indicated the only basis for D.H.'s request for substitute counsel was his desire for Mr. Laherty's personal representation, the juvenile court would have had no duty to provide substitute counsel, or to inquire further into the matter. However, the record indicates otherwise.
¶ 14 At the beginning of trial, D.H. complained: "Your Honor, I'd like to relinquish counsel at this time. I want to be appointed new counsel." "Mr. Laherty isn't here to represent me. He's been here, isn't this four times now, and now I don't even know who this person [ (Mr. Pietryga) ] is. He hasn't seen the case and now he's representing me in the trial case?" Although one possible interpretation of this objection is that D.H. would accept only Mr. Laherty as his attorney, the other possibility is that D.H. did not want Mr. Pietryga to represent him because he felt he was unprepared and thus could not render effective representation at trial. Therefore, the juvenile court had a duty to " `make some reasonable, non-suggestive efforts'" to determine whether Mr. Pietryga was prepared to represent D.H. at trial. In re C.C., 2002 UT App 149 at ¶ 6, 48 P.3d 244 (emphasis added) (quoting Pursifell, 746 P.2d at 273). The juvenile court's failure to do so was "per se error." Id. at ¶ 13 (quotations and citation omitted).
¶ 15 However, after a close examination of the record, we conclude the juvenile court's failure to inquire was harmless error. Under State v. Valencia, 2001 UT App 159, 27 P.3d 573, a court's error in failing to adequately inquire into a defendant's dissatisfaction with counsel may be deemed harmless, provided that the record contains sufficient information to make that determination. See id. at ¶¶ 13-18. Here, the record sufficiently supports the conclusion that Mr. Pietryga was well prepared and adequately represented D.H.'s interests.
¶ 16 Mr. Pietryga actively participated at trial. He cross-examined the State's witnesses, and he called D.H. to testify on his own behalf. With Mr. Pietryga's assistance, D.H. was able to offer testimony that he was scheduled to be released from jail two months after trial and that he had lined up a job and an apartment. D.H. further testified as to why he was unable to complete the services offered by DCFS. On redirect, Mr. Pietryga asked questions that allowed D.H. to clarify facts relating to his incarceration and employment, and why he had not contacted his children for eighteen months. Mr. Pietryga assisted D.H. in explaining why the mother had relinquished her rights to the childrena fact brought out by the State on its cross-examination. In closing argument, Mr. Pietryga urged that DCFS had failed to follow through on service plan promises, that the mother's relinquishment should not be taken into consideration, and that there was a total absence of testimony that contact with D.H. would be detrimental to the children.
¶ 17 The record on appeal clearly establishes that good cause did not exist for substitute counsel. Thus, the juvenile court's error in failing to adequately inquire into D.H.'s dissatisfaction with counsel was harmless. See id. at ¶ 14; Pursifell, 746 P.2d at 273-74. We therefore affirm on this issue.

II. Retroactive Application of the Amended Termination Statute
¶ 18 D.H. next argues the juvenile court erred in terminating his parental rights without making findings as required by the amended version of the Termination Statute, effective May 6, 2002.
The [T]ermination [S]tatute provides the grounds upon which juvenile courts may *621 terminate parental rights.... In relevant part, the amended [T]ermination [S]tatute added the following provision: "In any case in which the [juvenile] court has directed [DCFS] to provide reunification services to a parent, the court must find that [DCFS] made reasonable efforts to provide those services before the court may terminate the parent's [parental] rights...."
In re S.Y., 2003 UT App 66,¶ 12, 66 P.3d 601 (alterations in original) (quoting Utah Code Ann. § 78-3a-407(3)(a) (2002)).
¶ 19 In an order signed March 27, 2000, the juvenile court directed DCFS to provide reunification services to D.H. with respect to the children through a formal service plan. Because the final order terminating D.H.'s parental rights was not issued until July 31, 2002, D.H. argues the amended Termination Statute applies, and that the juvenile court erred by failing to find that DCFS made reasonable efforts in its reunification services prior to terminating D.H.'s parental rights.
¶ 20 "However, [D.H.] did not make this argument to the juvenile court." Id. at ¶ 14. As D.H. raises this argument for the first time on appeal, he "can only obtain relief from this court by demonstrating plain error by the juvenile court or exceptional circumstances." Id. "On appeal, [D.H.] does not argue plain error or exceptional circumstances, and we therefore decline to address [D.H.'s] claim." Id.

CONCLUSION
¶ 21 We conclude the juvenile court erred in not inquiring into D.H.'s complaints and request for new counsel. However, this error was harmless. D.H.'s argument for retroactive application of the Termination Statute also fails, as D.H. failed to preserve the issue for appeal. Therefore, we affirm the juvenile court's order terminating D.H.'s parental rights.
¶ 22 WE CONCUR: RUSSELL W. BENCH and PAMELA T. GREENWOOD, Judges.
NOTES
[1] N.H. voluntarily agreed to terminate her parental rights and does not appeal.