2003 UT App 191

**STATE of Utah, in the interest of T.M., K.M., and N.M., persons under eighteen years of age.**

**T.M. and S.M., Appellants,**

**v.**

**State of Utah, Appellee.**

**No. 20020570–CA.**

Court of Appeals of Utah.

June 12, 2003.

Gary L. Bell, Salt Lake City, for Appellants.

Mark L. Shurtleff, Attorney General, Carol L. Verdoia, and John M. Peterson, Assistant Attorneys General, Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before BILLINGS, Associate P.J., and DAVIS and ORME, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

¶ 1 T.M. (Father) and S.M. (Mother) (collectively, Parents) appeal the juvenile court's order terminating Parents' parental rights to T.M., N.M., and K.M. (Children). We affirm in part, reverse in part, and remand.

## BACKGROUND

¶ 2 Parents are the natural parents of T.M., K.M., and N.M. In October 1997, Parents voluntarily submitted to protective supervision services through the Division of Child and Family Services (DCFS) after allegations that Children were living in unsanitary conditions at home. On February 26, 1998, DCFS filed a Petition for Protective Supervision Services based upon further allegations of physical neglect and because Parents had failed to respond to voluntary services. Parents requested appointed counsel, and due to their indigence the juvenile court appointed counsel to represent them. On June 4, 1998, Children were adjudicated abused or neglected. The juvenile court allowed Children to remain in the home, but ordered DCFS to provide protective supervision services.

¶ 3 On September 15, 1998, Parents stipulated to an amended custody petition and for the second time, the juvenile court adjudicated Children neglected. The juvenile court

ordered T.M. remain with the great-grand-mother and placed K.M. and N.M. with DCFS. The juvenile court ordered DCFS to prepare a service plan and ordered Parents to comply with the service plan. The juvenile court also appointed conflict counsel to represent Father. On October 22, 1998, the juvenile court ordered DCFS to provide reunification services.

¶4 On July 21, 1999, the State filed a Petition for Termination of Parental Rights and on August 5, 1999, the juvenile court terminated reunification services and changed Children's permanency goal to adoption. Trial was set on the termination petition for February 17, 2000. That same day, the parties indicated that a stipulation agreement had been reached. The agreement stated,

> [I]f the parents are in full compliance with the service plan and this agreement, at the conclusion of 4 months, the state will dismiss its petition to terminate parental rights. If the parents are not in full compliance, at the end of 4 months, or any time in between, it shall be presumptive proof of unfitness on the part of the parents, and the court shall set the matter for a hearing on the best interests of the children.

The juvenile court converted the agreement into an order and allowed T.M. to return home in April 2000, pursuant to the terms of the agreement.

¶5 At an evidentiary hearing on June 29, 2000, Judge Valdez found Parents were not in compliance with the agreement because Parents had failed to participate in domestic violence counseling, provide proof of employment, and become self-sufficient. Accordingly, Judge Valdez entered findings of fact and conclusions of law on July 7, 2000, adjudicating Parents "unfit" pursuant to statute and ordering trial to proceed on the best interests of the children.

¶6 On September 27, 2000, Parents filed a Motion to Reconsider, which was denied on October 6, 2000. On October 6, 2000, Parents filed a motion seeking to recuse Judge Valdez and to have the case reassigned. Judge Valdez certified the recusal motion to the presiding judge for determination and on

October 19, 2000, Judge Behrens entered the juvenile court's Order of Recusal and Reassignment. The matter was reassigned to Judge Hornak.

¶7 On March 26, 2001, a trial was held on the best interests of the children. At the onset of trial, appointed counsel for Parents indicated to the juvenile court that after consulting with other attorneys, Parents wished to discharge court-appointed counsel and proceed with a private attorney. In addition, Mother stated on the record her reasons for wanting new counsel and why Parents waited until the onset of trial to move for substitution of counsel. The juvenile court ruled that the trial would proceed and that Parents could either proceed pro se or with their presently-appointed counsel. The juvenile court made no further inquiry as to Parents' dissatisfaction with appointed counsel. Parents opted to keep their court-appointed counsel rather than proceed pro se.

¶8 On June 5, 2002, the juvenile court entered its findings of fact, conclusions of law, and order terminating Parents' parental rights. Parents now appeal.

## ISSUES AND STANDARDS OF REVIEW

¶9 First, Parents argue the juvenile court erred in terminating their parental rights without first making findings required by the amended version of Utah Code Ann. § 78–3a–407 (2002) (termination statute), effective May 6, 2002. Determining "which version of the termination statute applie[s] is a matter of statutory interpretation, which presents a 'question[ ] of law which we review for correctness, according no particular deference to the [juvenile] court's interpretation.'" *In re S.Y.*, 2003 UT App 66,¶10, 66 P.3d 601 (second and third alterations in original) (quoting *State v. Coleman*, 2001 UT App 281,¶5, 34 P.3d 790). However, when "'a party ... fails to bring an issue to the [juvenile] court's attention,' that party is 'barred from asserting it on appeal' absent a showing of 'exceptional circumstances or plain error.'" *Id.* (alterations in original) (quoting *Brigham City v. Stuart*, 2002 UT App 317,¶14, 57 P.3d 1111).

¶ 10 Second, Parents assert the juvenile court erred when it failed to inquire into their complaints regarding court-appointed counsel before denying their request to be represented by private counsel. We review " '[a juvenile] court's failure to investigate a ... timely substitution request [made by an indigent party with appointed counsel]' " under a correction of error standard. *In re C.C.,* 2002 UT App 149, ¶ 13, 48 P.3d 244 (second and third alteration in original) (quoting *State v. Vessey,* 967 P.2d 960, 962 (Utah Ct.App.1998)).

¶ 11 Third, Parents contend the juvenile court erred in relying on a stipulation agreement to adjudicate Parents "unfit" under subsection 408(2) of the termination statute. *See* Utah Code Ann. § 78–3a–408(2) (2002). "Given that the facts were stipulated, we review the conclusions drawn by the juvenile court for correctness." *In re N.K.C.,* 1999 UT App 345, ¶ 7, 995 P.2d 1. However, when a party "fails to bring an issue to the [juvenile] court's attention, that party is barred from asserting it on appeal absent a showing of exceptional circumstances or plain error." *In re S.Y.,* 2003 UT App 66 at ¶ 10, 66 P.3d 601 (alterations in original) (quotations and citation omitted).

¶ 12 Fourth, Parents maintain that the juvenile court committed plain error by not declaring a mistrial following the recusal of Judge Valdez and reassignment of the case. To prevail on a claim of plain error, Parents must establish that "(i) [a]n error exists; (ii) the error should have been obvious to the ... court; and (iii) the error is harmful." *State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

## ANALYSIS

### I. Application of the Amended Termination Statute

¶ 13 Parents argue the juvenile court erred in terminating their parental rights without making findings required by an amendment to the termination statute. *See* Utah Code Ann. § 78–3a–407 (2002). The amendment at issue, effective May 6, 2002, *see id.* (Amendment Notes), provides that "[i]n any case in which the [juvenile] court has direct-ed [DCFS] to provide reunification services to a parent, the court must find that [DCFS] made reasonable efforts to provide those services before the court may terminate the parent's rights." *Id.* § 78–3a–407(3)(a).

¶ 14 On October 22, 1998, the juvenile court entered an order requiring DCFS to provide Parents with reunification services. Later, on June 5, 2002, the juvenile court terminated Parents' parental rights pursuant to section 78–3a–407. The juvenile court did not include in the termination order a finding that DCFS made reasonable efforts to provide reunification services. "However, [Parents] did not make this argument to the juvenile court. Thus, [Parents] can only obtain relief from this court by demonstrating plain error by the juvenile court or exceptional circumstances." *In re S.Y.,* 2003 UT App 66, ¶ 14, 66 P.3d 601.

¶ 15 In other cases presenting this same retroactivity argument we have "decline[d] to address" the issue on the merits because it was not addressed by the juvenile courts and "[o]n appeal, [the parties have] not argue[d] plain error or exceptional circumstances." *Id.*

¶ 16 However, Parents here argue exceptional circumstances on appeal. We agree with Parents that the exceptional circumstances exception applies. "[T]he 'exceptional circumstances' rubric [may be employed] where a change in law or the settled interpretation of law color[s] the failure to have raised an issue at trial." *State v. Irwin,* 924 P.2d 5, 10 (Utah Ct.App.1996). In the instant case, an amendment to the termination statute now requires juvenile courts to make findings that DCFS provided reasonable reunification efforts prior to terminating parental rights. *See* Utah Code Ann. § 78–3a–407(3)(a). We conclude the amendment was "a change in law or the settled interpretation of law [that] colored the failure to have raised [the retroactivity] issue at trial" in this case. *Irwin,* 924 P.2d at 10. Accordingly, we proceed to the merits.

¶ 17 It is a "well-established rule that statutory enactments which affect substantive or vested rights generally operate only prospectively," and "the substantive law

to be applied throughout an action is the law in effect at the *date the action was initiated.*" *State v. Higgs,* 656 P.2d 998, 1000 (Utah 1982) (emphasis added). This action to terminate Parents' parental rights was filed on July 21, 1999, before the effective date of the amendment. "[A] statute may be applied retroactively 'if it affects only procedural and not substantive rights,'" *Wilde v. Wilde,* 969 P.2d 438, 442 (Utah Ct.App.1998) (quoting *Washington Nat'l Ins. Co. v. Sherwood Assoc.,* 795 P.2d 665, 667 (Utah Ct.App. 1990)), but we "'narrowly draw[ ] the boundaries of what constitutes a procedural statute.'" *Olsen v. Samuel McIntyre Inv. Co.,* 956 P.2d 257, 261 (Utah 1998) (quoting *Salt Lake Child & Family Therapy Clinic v. Frederick,* 890 P.2d 1017, 1020 n. 3 (Utah 1995)). "[A] procedural law prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective, ... or simply clarifie[s] the legislature's previous intentions." *Wilde,* 969 P.2d at 442 (second alteration in original) (quotations and citation omitted). By contrast, "[a] substantive law creates, defines and regulates the rights and duties of the parties which may give rise to a cause of action." *Id.* (quotations and citation omitted).

¶ 18 We conclude the relevant portion of the amendment to the termination statute is substantive because it changes the rights and duties of the parties. Previously, a juvenile court could order reunification services and later terminate parental rights even if it found DCFS failed to make reasonable reunification efforts. In *In re M.E.C.,* decided under the previous termination statute, the juvenile court ordered DCFS to implement a reunification service plan and translate it into Spanish. *See* 942 P.2d 955, 958 (Utah Ct.App.1997). At the termination hearing, the juvenile court found DCFS disobeyed the court's order and "failed to make diligent efforts to provide appropriate services in light of [appellant's] language barri-

er." *Id.* (quotations omitted). Nevertheless, both the juvenile court and this court concluded "[the] juvenile court ha[d] the statutory authority [under the previous termination statute] to order the termination of a parent's rights based on finding abandonment, neglect, unfitness, [or] token efforts, regardless of whether [DCFS] provided any services, reasonable or not." *Id.* at 960.

¶ 19 In contrast, under the plain language of the amended termination statute, if a juvenile court orders reunification services, it *"must* find [DCFS] made reasonable efforts" to provide those services before the juvenile court can terminate parental rights based on, among other things, neglect, unfitness, or token efforts. Utah Code Ann. § 78–3a–407(3)(a) (emphasis added). Thus, the amendment substantively requires a finding of reasonable reunification efforts before a juvenile court can terminate parental rights.

¶ 20 Also, because the statutory change affects substantive rights, we do not apply the change retroactively "unless the legislature has clearly expressed that intention." *Olsen,* 956 P.2d at 261. The Utah Legislature did not express an intention to apply the termination statute's relevant amendment retroactively. Therefore, because DCFS filed its petition to terminate Parents' parental rights on July 21, 1999, well before the amendment's May 6, 2002 effective date, the juvenile court did not err in applying the 2001 version of the termination statute.[1]

## II. Juvenile Court's Duty to Inquire as to Parents' Dissatisfaction with Appointed Counsel

¶ 21 Second, Parents contend the juvenile court abused its discretion by failing to inquire into Parents' complaints regarding court-appointed counsel before denying Parents' requests to be represented by private counsel. The right to counsel in parental termination proceedings is granted pursuant

1. Parents point to the amendment's legislative history in arguing the amendment is procedural. The amendment's plain language, however, is unambiguous and we therefore decline to consider Parents' arguments. *See State v. Lusk,* 2001 UT 102, ¶ 19, 37 P.3d 1103. Nevertheless, much

of the legislative history provided by Parents suggests the amendment is substantive rather than procedural. For instance, Senator Eastman explained that the amendment "softens, somewhat, the power to terminate rights."

to Utah Code Ann. § 78–3a–913(1)(a) (2002), which provides that

> parents, guardian[s], custodian[s], and the minor, if competent, shall be informed that they have the right to be represented by counsel at every stage of the proceedings. They have the right to employ counsel of their own choice and if any of them requests an attorney and is found by the court to be indigent, counsel shall be appointed by the court.

*Id.* Interpreting this statute, we held that "indigent parents facing the permanent deprivation of their parental rights are entitled not only to an appointed attorney, but to the *effective* assistance of counsel." *In re C.C.*, 2002 UT App 149,¶ 7, 48 P.3d 244. Furthermore, "[a]n integral part of the right to the effective assistance of counsel is the opportunity . . . to have the court explore a party's complaints regarding the assistance [the appointed attorney] provide[s] to determine if substitute counsel is . . . necessary." *Id.* at ¶ 9. A juvenile court that "fail[s] to fully investigate a parent's expressed discontent . . . risks denying that parent['s] right to adequate representation." *Id.* Hence, "for the statutorily-provided right to counsel in termination proceedings to be meaningful, juvenile courts . . . must explore whether there is any validity to an indigent parent's expressed complaints and determine whether the parent's relationship with [the] appointed attorney has deteriorated to the point that sound discretion requires substitution." *Id.* at ¶ 10 (quotations and citation omitted). Notably, such an inquiry must be conducted "even when the [juvenile court] judge suspects that the [parent's] requests are disingenuous and designed solely to manipulate the judicial process and delay the trial." *Id.* (first alteration in original) (quotations and citations omitted).

¶ 22 Here, Parents were indigent and the juvenile court appointed counsel to represent them. On March 26, 2001, the juvenile court held a trial to determine the best interests of the children. At the onset of trial, counsel for Father told the juvenile court: "Your Honor, this morning my client informed me that after conferring with two other attorneys, he feels that my counsel has been ineffective and that I'm not vigorously representing his case and would like to discharge me from this case and [be] given an opportunity to retain different counsel." [2] Counsel for Mother then said, "My client also indicated the same thing, your Honor." The juvenile court then noted,

> [T]his case was set two months ago. Now if [Parents] walked in today with private—privately retained counsel and that attorney said I just received the case last week, I need a continuance. But at this point, I don't even know if they know who they're going to retain, and why did they wait two months?

As counsel and Parents attempted to answer this query from the bench, Mother offered the following explanation on the record for wanting new counsel and also for the delay in notifying the juvenile court of this desire:

> It was—it was admitted to us in—in a conference that we were talked into signing treatment plans and things like that in situations where it was admitted that they knew that we were advised that we couldn't complete these plans. That was by our counsel . . . a previous counsel and my husband's counsel.
>
> And the reason we hadn't had a chance to seek other counsel up till now is because of [DCFS] asking us to do things to our home which took up lots of time and we have been talking to people and there are people who are willing to take our case right now.

We can find nothing in the record to indicate the juvenile court, upon hearing Parents' express dissatisfaction with appointed counsel, undertook "some reasonable non-suggestive efforts to determine the nature of [Parents'] complaints," as required by *In re C.C.*, 2002

---

**2.** To clarify, Parents were not requesting other appointed counsel. Parents' request was that a substitution be allowed so that private counsel could represent them. The record indicates that on March 29, 2001, a private attorney entered an appearance in the juvenile court on behalf of Parents. The appearance was signed on March 26, 2001, the date of the first day of the best interests trial. It seems, to us, unusual to deny Parents the right to proceed with private counsel they had already obtained.

UT App 149 at ¶ 6, 48 P.3d 244 (quotations and citation omitted).

■ ¶ 23 By failing to inquire into the substance of Parents' complaints and requests to substitute counsel, the juvenile court failed to adequately apprize itself of the facts necessary to determine whether substitution of counsel was necessary as a matter of sound discretion. Such " 'failure to investigate a . . . timely substitution request [made by an indigent parent with appointed counsel] is per se error.' " *Id.* at ¶ 13 (alterations in original) (quoting *State v. Vessey*, 967 P.2d 960, 962 (Utah Ct.App.1998)). Under *In re C.C.*, we conclude the juvenile court erred.[3] Thus, we remand to the juvenile court for an evidentiary hearing to determine whether Parents' complaints concerning court-appointed counsel justified granting Parents' requests to substitute privately-retained counsel of Parents' choosing in place of court-appointed counsel. *See id.* at ¶ 14. "If so, the [juvenile] court should grant [Parents] a new trial. However, if the juvenile court determines [Parents'] request for substitution of counsel was unfounded, the judgment . . . would stand as entered." *Id.*

### III. Reliance Upon the Stipulation Agreement

■ ¶ 24 Third, Parents assert the juvenile court erred in relying upon a stipulation agreement in adjudicating Parents "unfit" under subsection 407(3) of the termination statute. *See* Utah Code Ann. § 78–3a–407(3) (2002). However, our review of the record reveals that this argument was not preserved below.[4] "[W]here 'a party . . . fails to bring an issue to the [juvenile] court's attention,' that party is 'barred from asserting it on appeal' absent a showing of 'exceptional circumstances or plain error.' " *In re S.Y.*, 2003 UT App 66, ¶ 10, 66 P.3d 601 (second and third alterations in original) (citation omitted). Because Parents "do[ ] not argue plain error or exceptional circumstances" on appeal, we "decline to address [Parents'] claim." *Id.* at ¶ 14 (citation omitted).[5]

### IV. Mistrial

■ ¶ 25 Fourth, Parents maintain that the juvenile court committed plain error by not declaring a mistrial after Judge Valdez

3. We recently decided the case of *In re R.H.*, 2003 UT App 154, 474 Utah Adv. Rep. 38, 71 P.3d 616, 2003 WL 21195474. In that case, we held that "[t]he record on appeal clearly establishe[d] that good cause *did not* exist for substitute counsel. Thus, the juvenile court's error in failing to adequately inquire into [appellant's] dissatisfaction with counsel was harmless." *Id.* at ¶ 17 (emphasis added). However, unlike in *In re R.H.*, the voluminous and convoluted record in the present appeal does not allow us to conclude that the juvenile court's error was harmless as a matter of law.

4. The record reveals that Parents raised several issues before the juvenile court concerning whether the agreement was reasonable, how compliance with the agreement would be determined, and whether non-compliance would create a rebuttable presumption of unfitness. However, we are unable to locate in the record any mention by Parents that the stipulation agreement might be invalid as a matter of law, as Parents now assert on appeal.

Furthermore, during the best interests hearing, the following exchange ensued on the record: On direct examination of Mother, the State asked questions that Parents' counsel construed as going to the question of unfitness. Accordingly, he objected:

Your Honor, . . . I have not been involved in this case so I don't know whether we are going into duplicative evidence or not. There has been an unfit finding against my client. Apparently we are here on best interest. I suppose we could go through the gambit of everything once again but it seems to me that's going to be, if we've already done the unfitness finding I don't think it benefits anybody to go through that again except to be somewhat prejudicial to my clients in terms of having to rehash the same things over again that there has already been an unfitness finding for and I don't mean to be too particular but we're going to be here for quite some time going over the things that lead up to the unfitness finding and if there's already unfitness finding why do we need to do that?

5. Parents also contend the juvenile court erred in determining Parents were not in compliance with the terms of the stipulation agreement. To challenge a factual finding, Parents "must marshall [sic] the evidence in support of the findings and then demonstrate that despite this evidence, the [juvenile] court's findings are so lacking in support as to be against the clear weight of the evidence." *In re D.G.*, 938 P.2d 298, 301 (Utah Ct.App.1997) (alterations in original) (quotations and citations omitted). Here, Parents have failed the marshaling requirement and we need not further examine their claims on this issue.

was recused and the case reassigned, and where Judge Valdez had already entered an order finding Parents unfit, upon which the juvenile court relied in terminating Parents' parental rights.

 ¶ 26 To prevail on appeal on a claim of " 'plain error,' [Parents] must establish that '(i) [a]n error exists; (ii) the error should have been obvious to the [juvenile] court; and (iii) the error is harmful.' " *State v. Irwin*, 924 P.2d 5, 7 (Utah Ct.App.1996) (second alteration in original) (quoting *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993)). "If any one of these requirements is not met, plain error is not established." *Dunn*, 850 P.2d at 1209. Under the circumstances of this case—where the order was based on the parties' stipulation—Judge Hornak did not err in relying on the order entered by Judge Valdez. Furthermore, even if it was error, it was not obvious error. On October 19, 2000, Judge Behrens entered an order recusing Judge Valdez and reassigning the case to Judge Hornak. Judge Behrens's order contained no findings of fact or conclusions of law and hence did not directly address the alleged bias. Thus, it would not have been obvious to Judge Hornak that Judge Valdez was removed from the case as a result of bias. As such, Parents' plain error argument fails.

## CONCLUSION

 ¶ 27 The juvenile court did not err in failing to enter a finding that DCFS failed to make reasonable efforts in providing reunification services prior to terminating Parents' parental rights because the amendment to the termination statute was a substantive change that did not apply retroactively to Parents' termination proceeding. Because Parents failed at trial to argue that the juvenile court erred in relying upon a stipulation agreement in adjudicating Parents unfit, and because Parents do not argue plain error or exceptional circumstances on appeal, we de-

cline to reach the merits of Parents' claim on this issue. Also, the juvenile court did not commit plain error in not declaring a mistrial. Hence, on these issues we affirm. However, the juvenile court committed legal error by not inquiring into Parents' complaints regarding their court-appointed counsel. Therefore, we remand for an evidentiary hearing to determine whether Parents' express dissatisfaction with court-appointed counsel justified substitution of counsel.[6]

¶ 28 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.

---

6. Parents' final argument on appeal is that the juvenile court committed plain error in overruling their objection to Dr. Wanlass's rebuttal testimony. We disagree. The juvenile court has discretion to allow or disallow rebuttal testimony. *See Turner v. Nelson*, 872 P.2d 1021, 1023 (Utah 1994). "Generally, 'testimony presented for the purpose of rebuttal should be admitted....' " *Green v. Louder*, 2001 UT 62, ¶ 23, 29 P.3d 638. Because we determine the juvenile court did not abuse its discretion in allowing Dr. Wanlass to testify, we do not further analyze Parents' claim of plain error on this issue.