2018 UT App 86

# THE UTAH COURT OF APPEALS

THOMAS K. TRUE AND MELISSA L. TRUE,
Appellants,
*v.*
UTAH DEPARTMENT OF TRANSPORTATION,
Appellee.

Opinion
No. 20160704-CA
Filed May 10, 2018

Second District Court, Ogden Department
The Honorable Joseph M. Bean
No. 110903926

Francis J. Martin, Attorney for Appellants

Sean D. Reyes and J. Clifford Petersen, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGE
DIANA HAGEN concurred. JUDGE RYAN M. HARRIS concurred in
the result, with opinion.

POHLMAN, Judge:

¶1     Appellants Thomas K. True and Melissa L. True appeal
the district court's grant of summary judgment in favor of the
Utah Department of Transportation (UDOT), dismissing on the
basis of governmental immunity their claim that injuries they
sustained in a traffic accident resulted from UDOT's negligence.
We affirm.

BACKGROUND

*The Accident*

¶2      In June 2009, a construction project was underway in Ogden, Utah, to install a water main line under a certain intersection. Because the project involved "digging or excavating" on a state highway, the project's general contractor had been required by law to obtain a permit from UDOT before beginning construction. The contractor had duly submitted the permit application before starting construction, which included submission of a traffic control plan. UDOT approved the traffic control plan and then issued the contractor the appropriate permit.

¶3      The permit "granted [the contractor] permission to encroach on [the] state highway" and "identified the what, when and where of [the contractor's] authorization." It also required the contractor to notify a UDOT permit inspector twenty-four hours before starting the work and generally provided that "[a]n inspector may be required at permittee's expense, with 48 hours notice." Failure to comply with the "regulations, specifications, or instructions pertinent to [the] permit" could result in UDOT either suspending or "stopping all or any part of the work."

¶4      UDOT assigned a transportation technician to perform inspections of the project, as provided in the permit. The technician "regularly inspected the job site and supported [the contractor] in its efforts to implement and comply with the traffic control plan." The technician's duties included inspecting the traffic control at the site, making sure that it conformed to the traffic control plan, and generally monitoring the construction's effect on the highway. However, the technician was not present at the project site every day.

¶5      On June 19, 2009, the Trues were riding a motorcycle together in Ogden. As they rode through the intersection

undergoing construction, they were struck by a truck turning left into the intersection. Both Trues were injured, and they brought a negligence action against UDOT, the contractor, and the truck driver.[1] The Trues asserted that UDOT was negligent on three grounds: (1) "approving an unsafe traffic control plan"; (2) "failing to maintain a safe intersection"; and (3) "failing to properly monitor the traffic control to ensure it was being carried out in accordance with the plan." In particular, the Trues asserted that UDOT was negligent in "allowing the removal of a no-left-turn sign days before the collision took place, contrary to the traffic control plan," and that, had the sign remained in place, the truck driver would have been prevented from turning left into their path.

*The Motion for Summary Judgment*

¶6 UDOT moved for summary judgment. For purposes of its motion, UDOT conceded that the Trues' injuries were "proximately caused by a negligent act or omission" sufficient to waive its immunity, but it argued that it nonetheless retained immunity from suit through the permit exception to the waiver of immunity provided in section 63G-7-301(5)(c)[2] of the Governmental Immunity Act of Utah (the Act). Specifically, UDOT contended that it retained immunity because the Trues' injuries "arose out of, in connection with, or resulted from" the issuance of the permit to the contractor. At the time UDOT filed and argued its motion, the Utah Supreme Court had interpreted the "arose out of, in connection with, or resulted from" language as establishing a "but-for" causation standard. Accordingly,

---

1. The contractor and the truck driver have been dismissed from the case.

2. Although the Governmental Immunity Act of Utah has since been amended, we cite its provisions as they existed in 2009.

UDOT argued that all of the Trues' allegations were connected to the issuance of the permit and that "but for" the permit's issuance, no accident or injury would have occurred.

¶7     The Trues argued, in contrast, that their claims of negligence "arose not from issuance of the permit, but from UDOT's own negligence in failing to ensure that the intersection was safe during construction." They contended that UDOT "had a duty to maintain the intersection in a safe condition independently from the issuance of the permit for the construction work" and that UDOT had breached that duty by approving the unsafe traffic control plan, failing to maintain a safe intersection, and failing to properly monitor the traffic control situation at the intersection. They also argued that UDOT's negligent actions could not "be characterized as formal, official acts," as required for the permit exception to apply.

¶8     The district court orally granted UDOT's summary judgment motion during the hearing on the motion, and it directed counsel for UDOT to prepare an order. The court determined that issuing the permit to the contractor constituted a formal, official act and stated that UDOT would retain immunity for actions "related to[] [or] arising out of the issuance of the permit." The court further concluded that the specific actions complained of by the Trues—approving the traffic control plan, failing to maintain a safe intersection, and failing to properly inspect the intersection—arose from, were related to, and "came as a result of UDOT issuing the Permit." Consequently, the court determined that but for the issuance of the permit, the injuries would not have occurred, and that UDOT therefore retained immunity.

*The Issuance of* Barneck

¶9     The district court held the summary judgment hearing on June 11, 2015. One day later, the Utah Supreme Court issued its decision in *Barneck v. Utah Department of Transportation*, 2015 UT

50, 353 P.3d 140. In that decision, the supreme court repudiated the "but-for" causation standard that had previously been applied to determine whether an injury "arises out of, in connection with, or results from" the exceptions listed in Utah Code section 63G-7-301(5), including the permit exception. *Id.* ¶ 2. In its place, the court adopted a proximate cause standard for determining whether an injury was sufficiently related to an enumerated exception. *Id.* ¶¶ 2, 38, 44.

¶10    On June 16, 2015, counsel for UDOT sent the court a letter advising the court of *Barneck*.[3] UDOT's counsel explained his belief that the court's oral ruling was still correct even under the new causation standard, but he requested an opportunity to brief the issue if the court chose to revisit its summary judgment decision. UDOT's counsel copied the Trues' counsel on the letter. The Trues did not respond to the letter or otherwise ask the court to reevaluate its summary judgment decision in light of the new causation standard established in *Barneck*. UDOT filed its proposed order on July 27, 2015, which the Trues approved as to form, and the district court entered its written order granting summary judgment on July 29, 2015, approximately fifty days after the court issued its oral ruling during the hearing. The case remained pending for nearly another year, during which time the Trues settled their claims against the other defendants. The district court entered final judgment as to all parties and claims on July 20, 2016.

---

3. Both parties include the letter in the addenda of their briefing and rely on it to support their respective arguments regarding preservation. However, the letter was not included in the record, and neither party has cited authority justifying our consideration of it on appeal. Nevertheless, because both sides cite the letter in their briefing, we construe their reliance as a stipulation that the record can be supplemented with the inclusion of the letter, and we therefore consider it to be part of the record on appeal.

¶11 The Trues timely appealed the district court's July 29, 2015 summary judgment order in favor of UDOT.

ISSUE AND STANDARD OF REVIEW

¶12 The Trues argue on appeal that the district court improperly granted UDOT's motion for summary judgment, challenging the district court's determination that UDOT retained immunity under the permit exception to immunity waiver. Specifically, they contend that UDOT's issuance of the construction permit did not proximately cause the accident and their injuries; therefore, UDOT did not have immunity under the permit exception.

¶13 "We review the district court's decision granting summary judgment de novo, affording it no deference," and in doing so, "we determine whether UDOT has established that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Barneck v. Utah Dep't of Transp.*, 2015 UT 50, ¶ 8, 353 P.3d 140; *see also* Utah R. Civ. P. 56(a).

ANALYSIS

¶14 The district court determined that the Trues' injuries "arose out of, related to, or resulted from UDOT's issuance of the Permit." It did so by applying the pre-*Barneck* but-for causation standard. On appeal, the Trues argue for the first time that UDOT was not immune from suit under the permit exception of the Act because UDOT's issuance of the permit did not proximately cause the accident and their injuries. In particular, they contend that, through its negligent actions, UDOT waived its immunity, and that no waiver exception applied to effectively reinstate its immunity.

¶15 "We typically apply a three-part test to determine whether a governmental entity enjoys immunity under the Act

for the challenged activity." *Winkler v. Lemieux*, 2014 UT App 141, ¶ 5, 329 P.3d 849.

> First, courts must ascertain whether the activity was a governmental function and thereby entitled to blanket immunity under the Act. Second, if the activity constituted a governmental function, courts must then look to see whether the State has waived immunity under another section of the Act. Finally, courts must determine whether there is an exception to the waiver of immunity that retains immunity against suit for the cause of action in the particular case.

*Wagner v. State*, 2005 UT 54, ¶ 12, 122 P.3d 599.

¶16    Both parties concede that the first two prongs are met in this case and that only the third prong—"whether there is an exception to the waiver of immunity that retains immunity against suit"—is at issue. *Id.* The Act provides that immunity to suit will be reinstated for "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arises out of, in connection with, or results from," among other things, "the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization." Utah Code Ann. § 63G-7-301(5)(c) (LexisNexis 2008).

¶17    The parties disagree about whether the permit exception under subsection (5)(c) applies. The Trues argue that the permit exception does not apply for two reasons: (1) the issuance of the construction permit did not proximately cause their injuries under the causation standard announced in *Barneck*, and (2) UDOT's negligent actions "cannot be characterized as formal, official acts," as required under the supreme court's statutory interpretation of the permit exception in *Thayer v. Washington*

*County School District*, 2012 UT 31, 285 P.3d 1142. We address each contention below.

## I. Proximate Causation under *Barneck*

¶18 During the summary judgment proceedings, the parties disagreed about whether the issuance of the permit caused the Trues' injuries. The causation standard then in effect and relied upon by the parties for determining whether a waiver exception applied was "but-for" causation, as articulated in cases such as *Blackner v. State Department of Transportation*, 2002 UT 44, 48 P.3d 949. *See Hoyer v. State*, 2009 UT 38, ¶ 32, 212 P.3d 547 (explaining that "the test for whether an exception to the waiver of immunity for negligence applies is whether 'but for' the excepted act, the harm would not have occurred"). Under that standard, UDOT simply had to demonstrate "*some* causal nexus" between the issuance of the permit and the harm that followed. *See Blackner*, 2002 UT 44, ¶ 15; *see also Moss v. Pete Suazo Utah Athletic Comm'n*, 2007 UT 99, ¶¶ 14–19, 175 P.3d 1042 (interpreting the permit waiver exception to conclude that the challenged governmental action need not be "directly tied to a licensing decision," because the statutory language is "broad" and "certainly is not restricted to those decisions that constitute licensing decisions per se"). Accordingly, the district court's oral ruling and written order on summary judgment incorporated and applied the "but-for" causation standard to determine that UDOT had established its entitlement to immunity under the permit exception to waiver.

¶19 On appeal, the Trues do not ask us to reverse the district court's summary judgment ruling on the basis that its but-for causation determination was erroneous. Rather, they ask us to reverse the court's ruling based on the new proximate causation standard announced in *Barneck*. As discussed above, *Barneck* repudiated the "but-for" causation standard applicable to waiver exceptions and replaced it with a narrower proximate causation standard. *Barneck v. Utah Dep't of Transp.*, 2015 UT 50, ¶ 2, 353

P.3d 140. Specifically, *Barneck* held that "an immunity-invoking condition . . . must be a *proximate* cause of the plaintiff's injuries in order to sustain the reinstatement of immunity." *Id.* ¶ 38; *see also id.* ¶¶ 42–44 (explaining that "a but-for connection" "would allow the statutory exceptions to nullify the immunity waivers," which is illogical "in the context of a statute aimed at waiving governmental immunity for negligence"). Relying on *Barneck*, the Trues contend that the issuance of the construction permit did not proximately cause their injuries, because "[i]ssuing the construction permit did not foreseeably heighten the 'scope of the risk' of [their] accident," as required to establish proximate causation. (Quoting *Barneck*, 2015 UT 50, ¶ 48.) Instead, they allege that "UDOT's own negligence in approving an unsafe traffic control plan and then failing to make sure the plan was being carried out correctly" caused their injuries.

¶20 In response, UDOT argues that we should decline to reach the Trues' *Barneck* causation argument because the Trues failed to preserve it in the district court and have not otherwise cited an exception to our preservation requirement. UDOT concedes that *Barneck* changed the causation standard applicable to whether immunity could be reinstated pursuant to a waiver exception and that all of the "litigation preceding [the district court's verbal summary judgment] ruling, including the summary judgment briefing and the extensive discovery conducted[,] . . . proceeded under what was then the governing pre-*Barneck* standard." However, UDOT contends that, despite having ample opportunity to raise the new causation standard as a basis for revisiting the summary judgment motion, the Trues failed to do so. Accordingly, UDOT contends that the Trues should not be permitted to now argue that reversal is appropriate under *Barneck*.

¶21 After conceding in their opening brief that the proximate causation issue was not raised below, the Trues counter in their reply brief that we should reach their causation argument

because "[t]he basic issue of whether Defendant UDOT has immunity based on the permit exception was preserved for review." The Trues also argue that the district court's silence in response to UDOT's letter advising the court of the change in the law "led [them] to believe that *Barneck* would not have changed [the district court's] decision."

¶22 We agree with UDOT that, even though the overarching issue of causation was before the district court, the Trues did not preserve the distinct legal theory now advanced on appeal. Further, because the Trues have not argued an exception to our preservation requirement to persuade us to reach their causation argument, we decline to reach the issue now. *Cf. Marcroft v. Labor Comm'n*, 2015 UT App 174, ¶ 4, 356 P.3d 164 (explaining that "we have consistently refused to consider arguments of plain error raised for the first time in an appellant's reply brief, even if the plain error argument is in response to a dispute over preservation raised for the first time in the appellee's brief" (quotation simplified)).

A.     The Preservation Requirement

¶23 Our preservation requirement is well-settled: we require parties to have raised and argued before the district court the issue that they raise and argue before us on appeal, and if a party does not, "it has failed to preserve the issue." *State v. Johnson*, 2017 UT 76, ¶ 15. As our supreme court recently explained, "[o]ur appellate system has developed along the adversarial model, which is founded on the premise that parties are in the best position to select and argue the issues most advantageous to themselves, while allowing an impartial tribunal to determine the merits of those arguments." *Id.* ¶ 8. Parties, not the courts, have the duty "to identify legal issues and bring arguments . . . to adjudicate their respective rights and obligations." *Id.* ¶ 14. It is through fulfilling this duty in a district court that parties also fulfill their duty to preserve arguments for

appeal. *See Baumann v. Kroger Co.*, 2017 UT 80, ¶ 25 (explaining the importance of the preservation requirement).

¶24   As a result, it is incumbent on parties to preserve in the district court the issues they wish to assert on appeal or "risk losing the opportunity to have the [appellate] court address that issue." *See Johnson*, 2017 UT 76, ¶¶ 14–15. For an issue to be preserved, a party must raise it before the district court specifically, in a timely manner, and with support by evidence and relevant legal authority, *Donjuan v. McDermott*, 2011 UT 72, ¶ 20, 266 P.3d 839, such that the issue has been "presented to the trial court in such a way that the trial court has an opportunity to rule on [it]," *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (quotation simplified). *See also In re Baby Girl T.*, 2012 UT 78, ¶ 34, 298 P.3d 1251 (explaining that, to be preserved, an issue "must at least be raised to a level of consciousness such that the trial judge can consider it" (quotation simplified)).

¶25   Our preservation requirement serves several important policies. To begin with, requiring parties to raise issues before a district court "allows an issue to be fully factually, procedurally, and legally developed" before it reaches an appellate court, which is necessary to facilitate a reviewing court's analysis of "both the application of a legal rule or principle to a concrete and well-developed dispute and, nearly as important, the effect of the district court's ruling on the overall course of the proceedings below." *Baumann*, 2017 UT 80, ¶ 25. Without the benefit of a fully developed record illustrating both the district court's thinking and the factual development bearing on the issue at hand, an appellate court is necessarily handicapped in reaching a well-considered decision. *See id.* ¶¶ 25–26.

¶26   The preservation requirement also serves important policies of judicial economy and fairness. *See Johnson*, 2017 UT 76, ¶¶ 8, 13. *See generally State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (identifying policies underlying the preservation rule). In terms of judicial economy, "requiring a party to advise a trial

court of potential errors" gives the trial court "the opportunity to correct [the potential errors] before they blossom into appellate issues." *Scott v. Scott*, 2017 UT 66, ¶ 15; *see also Patterson v. Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828 (explaining that "requiring a party to raise an issue or argument in the trial court gives the trial court an opportunity to address the claimed error, and if appropriate, correct it" (quotation simplified)). Among other benefits, "this avoids unnecessary appeals and retrials." *Patterson*, 2011 UT 68, ¶ 15 (quotation simplified).

¶27    In addition, "notions of fairness dictate that a party should be given an opportunity to address the alleged error in the trial court." *Kell v. State*, 2012 UT 25, ¶ 12, 285 P.3d 1133 (quotation simplified). "Having been given such a chance, the party opposing a claim of error might have countered the argument" in the district court. *Id.* (quotation simplified). Moreover, our preservation requirement "discourages a party from strategically ignoring errors in hopes of enhancing [his or] her chances of prevailing on appeal." *Scott*, 2017 UT 66, ¶ 15; *see also Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 28, 299 P.3d 990 (explaining that the preservation rule "prevents a party from avoiding an issue at trial for strategic reasons only to raise the issue on appeal if the strategy fails" (quotation simplified)).

¶28    Furthermore, while we do "exercise wide discretion when deciding whether to entertain or reject matters that are first raised on appeal," *Patterson*, 2011 UT 68, ¶ 13, our supreme court has recently reiterated that "we have limited our discretion [to entertain unpreserved issues] by creating exceptions to the general preservation rule," *State v. Johnson*, 2017 UT 76, ¶ 13. Such limitations on our discretion are "an effort to serve the policy considerations of judicial economy and fairness to the parties, to preserve the adversarial model, and to provide clear guidelines to litigants." *Id.*; *see also Patterson*, 2011 UT 68, ¶ 13 ("We have exercised this discretion to recognize some limited

exceptions to our general preservation rule."); *cf. State v. King*, 2006 UT 3, ¶ 14, 131 P.3d 202 ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one." (quotation simplified)).

¶29   Accordingly, if a party has not preserved an issue asserted on appeal, "the party [asserting the issue on appeal] must establish the applicability of one of [the preservation] exceptions to persuade an appellate court to reach that issue." *Johnson*, 2017 UT 76, ¶¶ 15, 17, 19 ("When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation."); *see also Baumann v. Kroger Co.*, 2017 UT 80, ¶ 25 (explaining that the appellant carries the burden of persuasion on an unpreserved issue, and that if the appellant does not undertake an analysis of the issue under the established exceptions to preservation, the appellant "will have necessarily failed to explain why we should reach the issue of which she complains").

¶30   The exceptions to preservation are plain error, exceptional circumstances, and, on some occasions, ineffective assistance of counsel. *In re adoption of K.A.S.*, 2016 UT 55, ¶ 19, 390 P.3d 278. If a party fails to argue and establish the applicability of a preservation exception, the appellate court will not reach the unpreserved issue. *See Baumann*, 2017 UT 80, ¶ 25; *Johnson*, 2017 UT 76, ¶¶ 17, 19; *State v. Rhinehart*, 2007 UT 61, ¶ 21, 167 P.3d 1046 (stating that "presentation of the merits of an issue [alone] cannot access an exception to the preservation doctrine"; instead, to persuade an appellate court to reach the merits of an unpreserved issue, an appellant should present the issue "through the lens of one or all of [the preservation] exceptions").

B.      Applying the Preservation Requirement

¶31      Applying these principles, we conclude that the Trues failed to preserve their *Barneck* proximate causation issue, and because they have failed to establish that a preservation exception applies, we decline to address the argument on its merits.

¶32      On appeal, the Trues contend that we ought to reverse the district court's decision because it was incorrect under the proximate causation standard announced in *Barneck*. To that end, the Trues have specifically defined the issue on appeal as whether "UDOT's act of issuing a construction permit proximately cause[d] [their] accident and injuries, thereby reinstating UDOT's immunity from suit under the permit exception." But the Trues did not raise before the district court the issue of whether UDOT retained immunity under the *Barneck* proximate causation standard, nor did they at any time otherwise suggest to the court that its summary judgment decision was erroneous in light of *Barneck*. The district court also did not sua sponte raise, address, and rule on the issue. *See Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218 (stating that a district court's "decision to take up the question conclusively overcame any objection that the issue was not preserved for appeal"). Our supreme court has directed us to "view *issues* narrowly." *See Johnson*, 2017 UT 76, ¶ 14 n.2. Although "new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation," an argument based upon an "entirely distinct legal theory" is a "new claim or issue" and must be separately preserved. *Id.* Whether UDOT's issuance of a construction permit proximately caused the Trues' injuries is not merely a new argument to support the issue raised below, but an "entirely distinct legal theory." *See id.* And, despite the concurrence's suggestion that it is proper to do so, we decline to redefine more broadly the issue for appeal identified by the

Trues to reach the conclusion that they have preserved the issue.[4]

---

4. While the concurrence makes some good points, in our adversarial system, it is the parties, not the courts, who maintain the duty to identify an issue and then make arguments about that issue both below and on appeal. *See State v. Johnson*, 2017 UT 76, ¶¶ 8–15; *see also State v. King*, 2006 UT 3, ¶ 14, 131 P.3d 202. We cannot discern how recrafting the issue identified by an appellant to reach the merits of what was an unaddressed issue below serves the policies undergirding our preservation requirement. For example, because the issue of UDOT's retention of immunity under a proximate causation standard was not addressed below, we have neither the district court's reasoning and analysis nor the associated factual development related to that issue to assist in our review. *See Baumann v. Kroger Co.*, 2017 UT 80, ¶¶ 25–26. It also cannot serve the interests of judicial economy and fairness to suggest to parties that they may forgo raising and arguing a distinct issue below in the hopes that the appellate court will resolve the issue that could have been raised below but instead went ignored by the party with the burden to raise it. *See Scott v. Scott*, 2017 UT 66, ¶ 15; *Patterson v. Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828.

Moreover, we note that, as a practical matter, a proximate causation analysis is "highly fact-sensitive" and "generally cannot be resolved as a matter of law." *See Breton v. Clyde Snow & Sessions*, 2013 UT App 65, ¶ 10, 299 P.3d 13 (quotation simplified). As UDOT contends, by failing to raise the proximate causation issue below, the Trues denied UDOT an opportunity to adequately address the applicability of *Barneck*, which might have included conducting further discovery and presenting additional evidence to support arguments about whether a waiver exception could still be invoked under the proximate causation standard. *See Kell v. State*, 2012 UT 25, ¶ 12, 285 P.3d 1133 (explaining that fairness dictates that the opposing party

(continued…)

¶33 Quite simply, the issue of whether UDOT retained immunity under the distinct proximate causation theory announced in *Barneck* was not raised or at all developed in the district court, and it was thereby not preserved. *See State v. Johnson*, 2017 UT 76, ¶ 15. As a result, because the issue has been raised for the first time on appeal, it is incumbent on the Trues to identify and establish an exception to our preservation doctrine to persuade us to reach the issue on its merits. *Baumann*, 2017 UT 80, ¶ 25.

¶34 The Trues have not carried their burden. In their opening brief, while they acknowledge that "the issue of proximate cause" was not preserved, they fail to offer any reasoned explanation for their failure to raise the issue of UDOT's retention of immunity under *Barneck*'s proximate causation standard. They acknowledge that *Barneck* essentially amounted to an intervening change in the law and that the district court did not apply it, but they provide no argument suggesting why we nevertheless ought to reach the merits.

¶35 Indeed, the Trues fail to raise any exception to the preservation doctrine. *See Baumann v. Kroger Co.*, 2017 UT 80,

---

(…continued)

should have the opportunity to "address the alleged error in the trial court" (quotation simplified)); *Patterson*, 2011 UT 68, ¶ 15 ("The policy of judicial economy is most directly frustrated when an appellant asserts unpreserved claims that require factual predicates.").

In short, while we can appreciate both the concurrence's desire to reach the merits of the *Barneck* issue here as well as its view that we should "err in close cases . . . on the side of allowing parties to bring claims and on the side of adjudicating claims on their merits," *see infra* ¶ 61, we are unable to embrace that view or join the concurrence in its resolution of the preservation question.

¶ 25 (explaining that an appellant cannot carry his or her burden of persuasion with regard to an unpreserved issue if he or she does not engage in an analysis of the preservation exceptions). It is certainly possible, for example, that an intervening change of law might create exceptional circumstances that could justify addressing an issue uniquely affected by that intervening change, *see, e.g.*, *Johnson*, 2017 UT 76, ¶¶ 31, 33 (observing that "a rare procedural anomaly" to establish the exceptional circumstances exception to preservation "exists where a change in law or the settled interpretation of law colors the failure to have raised an issue at trial" (quotation simplified)); *In re T.M.*, 2003 UT App 191, ¶ 16, 73 P.3d 959 (reaching the merits of an unpreserved issue based on a change in the intervening law because the appellants raised and argued the exceptional circumstances exception to preservation).

¶36  But the Trues must do more than simply note the intervening change of law to satisfy their burden. *See Baumann*, 2017 UT 80, ¶ 25; *see also Johnson*, 2017 UT 76, ¶¶ 29, 37 (stating that a party seeking to establish that exceptional circumstances justify reaching an unpreserved issue must "show[] that a rare procedural anomaly has occurred," at which point "additional factors must be considered to determine whether an appellate court should reach an unpreserved issue," and that these additional factors include whether failure to consider it would result in manifest injustice, whether a significant constitutional right is at stake, and judicial economy). We are not persuaded that the circumstances present in their case sufficiently justify their failure to have raised below the immunity issue that was essentially created by the decision in *Barneck*.[5]

---

5. We also part ways with the concurrence about the need to draw bright lines around the circumstances which may or may not require a party to, for example, file a motion to reconsider to

(continued…)

(…continued)

preserve an issue involving an intervening change of the law. For one thing, there *is* a bright line rule in play here: an issue that a party has not raised below is not preserved for appeal. *Johnson*, 2017 UT 76, ¶ 15. And this bright line is well-settled. Thus, parties are already well-advised that they have the duty to raise the issues below that they might wish to appeal. All else being equal, if *Barneck* would have entitled the Trues to relief from the summary judgment decision in the district court, then that is where they should have first raised the issue.

We are also less concerned than the concurrence about setting a precise temporal line before final judgment enters at which a party still retains the duty to raise an intervening change of law issue or risk waiving it. This is because our preservation doctrine appears to provide an avenue for relief to parties wishing to raise on appeal an unpreserved argument based upon an intervening change of the law—the exceptional circumstances exception. *See generally id.* ¶¶ 29–38; *In re T.M.*, 2003 UT App 191, ¶¶ 15–16, 73 P.3d 959.

Further, while the duty to preserve is a bright line, the unique circumstances that may be sufficient to establish an exception to the preservation requirement must be assessed on a case-by-case basis. *Cf. Johnson*, 2017 UT 76, ¶ 38 (explaining that the "precise contours" of the exceptional circumstances exception requires "case-by-case assessment"). The difficult line-drawing question is not whether a party has raised below an issue based on an intervening change in law or even whether a party should have raised it below. Rather, it is whether the circumstances in play justify the party's failure to raise below the issue based upon that change in law. And, as we have explained, it is the appealing party's burden to persuade us that the circumstances present justify reaching the merits of any unpreserved issue. *Baumann*, 2017 UT 80, ¶ 25.

¶37　Moreover, the justification proffered in the Trues' reply brief for their failure to raise the issue is unavailing. They blame their failure on the district court itself, contending that its failure to respond to UDOT's letter, which allegedly alerted the court to *Barneck*'s issuance, "led [them] to believe that *Barneck* would not have changed [the court's] decision," because if it had, presumably, the court "would have responded and invited further briefing on the issue." But their position essentially turns on its head our well-settled preservation requirement by shifting onto the court itself the burden of alerting the parties to potential errors. If the Trues believed that the district court erred in light of *Barneck*, it was their duty to use the procedural tools available to them to alert the district court. The court had no obligation to address the alleged error sua sponte. *See Patterson v. Patterson*, 2011 UT 68, ¶ 16, 266 P.3d 828.

¶38　In any event, we question whether, in light of the particular circumstances here, the Trues could have established the presence of circumstances sufficient to persuade us to reach the merits. For one thing, the timing in the case as well as the Trues' apparent awareness of *Barneck* suggest that the Trues consciously declined to first raise before the district court the theory for relief that they now attempt to raise on appeal. The change in the applicable law announced in *Barneck* occurred one day after the district court orally announced its summary judgment decision, and approximately fifty days elapsed between the time *Barneck* was decided and when the district court entered the written summary judgment order. The Trues were apparently aware of *Barneck* within days of its issuance, yet they did not ask the district court to revisit its summary judgment decision. Instead, the Trues approved the proposed summary judgment order filed by UDOT, memorializing the court's oral ruling, including its reliance on the pre-*Barneck* standard.

¶39    In addition, the Trues had available to them a procedural mechanism to ask the district court to revisit its summary judgment ruling in light of *Barneck*, of which they failed to take advantage. Although the district court entered its summary judgment order in July 2015, the Trues did not resolve their case against all defendants until one year later, in July 2016. *See generally Loffredo v. Holt*, 2001 UT 97, ¶¶ 10–12, 37 P.3d 1070 (explaining what kind of order constitutes a final judgment). Pursuant to Utah Rule of Civil Procedure 54(b), the order was not final and could have been revised at any time before the entry of final judgment. *See* Utah R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties, and may be changed at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."). Motions to "reconsider or revise nonfinal judgments . . . are sanctioned by our rules," *Gillett v. Price*, 2006 UT 24, ¶ 10, 135 P.3d 861, and have been recognized as "a proper vehicle" to ask the court to reconsider a summary judgment decision, including where "there has been a change in the governing law," *Trembly v. Mrs. Fields Cookies*, 884 P.2d 1306, 1311 (Utah Ct. App. 1994) (identifying factors that may weigh in favor of reconsidering a prior ruling under rule 54(b)). Yet at no time during the intervening months did the Trues raise an objection or ask the district court to revisit the summary judgment decision in light of the new *Barneck* causation standard. And it was their burden, as the party aggrieved by the court's summary judgment ruling, to do so, if they felt a change in the law rendered the decision erroneous.[6] *Cf. Patterson*, 2011

---

6. The concurrence expresses concern that our decision might encourage litigants to file flurries of motions to reconsider with the district court in an effort to ensure that they preserve any issue relating to an intervening change in the law—significant or

(continued…)

UT 68, ¶ 16 (explaining that it is a party's burden to detect and assert error, not the court's).

¶40 In sum, the Trues have not preserved the issue of whether UDOT retained permit-exception immunity under the proximate causation standard announced in *Barneck*. The Trues have also failed to establish—indeed, have not attempted to establish—an exception to our preservation requirement. Accordingly, we decline to reach the merits of the *Barneck* causation issue.

¶41 In reaching this conclusion, we recognize that parties have "no obligation to 'preserve' . . . citation to legal authority," *Torian v. Craig*, 2012 UT 63, ¶ 20, 289 P.3d 479, and that parties are generally allowed "to supplement an argument with new cases . . . that they did not raise in the district court," *Patterson*, 2011 UT 68, ¶ 18 n.7. We further acknowledge that where there is an intervening change in the law after a notice of appeal is filed, an appellant should cite any relevant law that has some bearing on a party's case.

---

(…continued)

not. While we appreciate the desire to forestall an inundation of potentially unnecessary filings with district courts, from an institutional standpoint we think the less desirable result is one that encourages parties to file appeals based on issues that they could have raised but instead entirely forewent below. Indeed, as explained above, our rules specifically sanction filing such motions to reconsider on nonfinal orders, *see Gillett v. Price*, 2006 UT 24, ¶ 10, 135 P.3d 861; they do not, for example, sanction parties' strategic refusal to raise potentially dispositive issues before a district court in the hopes that an appellate court will later come to the rescue, *see Scott*, 2017 UT 66, ¶ 15. We therefore err on the side of what we perceive to be the lesser institutional evil.

¶42    But it is crucially significant in this case that the *Barneck* proximate causation standard forms the core of the Trues' claim of error. The Trues are not merely supplementing the but-for causation arguments they presented to the district court; they are employing *Barneck* to argue for reversal based upon an entirely different analytical framework. *See State v. Johnson*, 2017 UT 76, ¶ 14 n.2 (explaining that raising an "entirely distinct legal theory" renders the matter a "new claim or issue," not merely a new argument about an issue, and that a new issue requires an exception to preservation if it was not preserved). As a result, it was incumbent upon the Trues either to preserve the *Barneck* proximate causation issue or to establish an exception to the lack of its preservation on appeal. That they have done neither effectively resolves the matter.

## II. UDOT's Actions as Formal, Official Acts

¶43    The Trues also argue that the permit exception does not apply because "UDOT's negligent actions cannot be characterized as formal, official acts," as required under our supreme court's decision in *Thayer v. Washington County School District*, 2012 UT 31, 285 P.3d 1142. The Trues assert that *Thayer* stands for the proposition that, in addition to causation, "two elements . . . must be satisfied" for the permit exception to apply. First, *Thayer* states that the governmental entity must have the legal authority, derived through "legislative or executive enactment," to issue, deny, suspend, or revoke permits (and thereby "give legal authority" to the entity requesting the permit). *See id.* ¶¶ 17–18 (quotation simplified). Second, *Thayer* states that the actions complained of must be "formal" and "official" in nature. *See id.* ¶¶ 11, 13–15 (explaining that the language of the permit exception "can be separated into two categories of terms: those relating to the governmental action," such as "issuance, denial, suspension, or revocation," and "those relating to the object of that action," such as "permit, license, certificate, [or] approval," and concluding that the permit

exception "applies only to formal, official, regulatory authorizations by a governmental entity empowered to issue, deny, suspend, or revoke" permits (quotation simplified)).

¶44 Here, the district court determined that the issuance of the permit was itself a formal and official action, that UDOT was immune "with respect to any injury" caused by issuing the permit, and that *all* of the specific actions alleged by the Trues as negligent and ultimately harmful—"approving an unsafe traffic control plan, failing to maintain a safe intersection, and . . . failing to properly monitor the traffic control [at the site] to ensure it was being carried out in accordance with the plan"— were caused by the issuance of the formal, official permit.

¶45 The Trues "concede that UDOT had the statutory authority to approve the traffic control plan, monitor traffic control, restrict access to roads at the construction site, and supervise others at the site." They also apparently do not challenge the district court's determination that the issuance of the permit itself was a formal, official action. But they contend that UDOT's decisions "*regarding traffic safety at the construction site* cannot be characterized as formal, official authorizations," because there was "no formal official action taken . . . when UDOT failed to maintain the intersection in a safe condition and failed to adequately supervise others at the scene by allowing the removal of the no-left-turn sign." (Emphasis added.) As a result, the Trues assert that the permit exception does not apply, and UDOT therefore does not retain immunity. They request reversal on that basis.

¶46 However, apart from contending that UDOT took no formal, official actions related to the worksite's safety and inspection itself, the Trues have not explained why, given the district court's overall determination that all of the complained-of actions arose from a formal, official permit issuance, it is appropriate for us to nonetheless separately analyze the formality of certain allegedly negligent worksite actions. Under

the law in effect at the time of the summary judgment hearing, this conclusion aligned with precedent on the issue of causation and the extent to which the issuance of a license or permit, and other actions flowing from issuing a permit, may be properly characterized as causing certain harm. *See Moss v. Pete Suazo Utah Athletic Comm'n*, 2007 UT 99, ¶¶ 14–19, 175 P.3d 1042 (explaining that the language of the permit exception is "not restricted to those decisions that constitute licensing decisions per se," and concluding that a government entity's violation of its own rules "not directly tied to a licensing decision" was nonetheless covered by the licensing exception because the violations ultimately related to and derived from the entity's licensing authority); *Gillman v. Department of Fin. Insts.*, 782 P.2d 506, 511–12 (Utah 1989) (rejecting the argument that failing to take certain steps to ensure compliance with conditions of an issued license constituted negligence distinct from any negligence arising from the ministerial act of issuing the license itself, and concluding that a government entity's failure to subsequently "ensure that [the licensee] complied with the conditions" attached to the license arose out of a licensing decision, as "broadly defined" by the licensing exception to waiver); *see also Thayer*, 2012 UT 31, ¶¶ 18–20 (explaining that requiring a government entity's action to be formal and official pursuant to its official regulatory authority is "consistent with [the] case law" established by *Moss* and *Gillman*, because in those cases "the [government] entity was empowered with the regulatory authority to issue the authorization in question").

¶47    As a result, to persuade us that reversal is appropriate on the grounds that the failure to specifically maintain the intersection in a safe condition and to adequately supervise others at the scene are not formal, official actions, the Trues must do more than simply convince us that the nature of those individual omissions is not formal or official, as required by actions covered by the permit exception under *Thayer*. Rather, the Trues must first persuade us that these actions did not arise

from the issuance of the permit—the action the Trues do not challenge as formal and official. Only then may we separately evaluate the identified omissions to determine whether reversal is appropriate on the basis that those omissions are not formal, official actions in and of themselves.

¶48    As explained above, the Trues have not succeeded in challenging the district court's causation analysis, with the result that the court's causation conclusion—and its conclusion that all of the alleged negligence arose from the issuance of the permit—stands. We therefore have no occasion to analytically reach the question of whether the two omissions identified by the Trues—failure to maintain the intersection in a safe condition and failure to adequately supervise others at the scene—themselves lacked the requisite formality. Those omissions remain formal and official by virtue of their causal relationship to the formal, official permit. *See Thayer*, 2012 UT 31, ¶¶ 18–20; *cf. Moss*, 2007 UT 99, ¶¶ 14–19; *Gillman*, 782 P.2d at 511–12.

## CONCLUSION

¶49    We conclude that the Trues have failed to preserve their challenge to the district court's causation analysis, and we decline to reach the issue on that basis. We also conclude that the Trues have failed to persuade us that UDOT's failure to maintain a safe intersection or adequately supervise the construction site lacked the requisite formal, official nature sufficient to establish the permit exception under Utah Code section 63G-7-301(5)(c). Accordingly, we affirm.

———————

HARRIS, Judge (concurring):

¶50    I share my colleagues' view that the district court correctly entered summary judgment in UDOT's favor, and

therefore agree that the district court's judgment should be affirmed. However, I reach that conclusion for different reasons. In my view, the Trues properly preserved for appellate review the issue of whether UDOT is immune from suit pursuant to the Utah Governmental Immunity Act's (the Act) "permit exception," and we ought to reach the merits of that issue. On the merits, however, UDOT has the better of the arguments. I would therefore affirm on the merits, rather than on the basis that the issue is unpreserved.

I

¶51 As the majority opinion recognizes, "[o]ur preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction." *Patterson v. Patterson*, 2011 UT 68, ¶ 13, 266 P.3d 828. As a result, appellate courts have "wide discretion" when determining whether to consider a matter preserved for appellate review. *Id.* In exercising this discretion, we must "balance the need for procedural regularity with the demands of fairness." *State v. Johnson*, 2017 UT 76, ¶ 12 (quotation simplified). In my view, under the circumstances of this case, we should not exercise that discretion to close the appellate courthouse door to the Trues.

¶52 UDOT filed its motion for summary judgment regarding governmental immunity in March 2015. At that time, *Barneck* had not yet been decided and, as the majority acknowledges, *supra* ¶ 18, "a but-for causal connection [was] sufficient to trigger a statutory reinstatement of immunity under an exception provision" of the Act. *Barneck v. Utah Dep't of Transp.*, 2015 UT 50, ¶ 39, 353 P.3d 140 (citing, among other cases, *Hoyer v. State*, 2009 UT 38, ¶ 32, 212 P.3d 547). Because the governing case law, at the time, called for analysis of whether a "but-for causal connection" existed, the parties briefed the issue with that rule in mind. The parties appeared for oral argument on June 11, 2015, and presented the issue to the district court in the same way they had argued it in the briefs. Everyone here involved—apparently

even including UDOT and the majority—appears to agree that the issue was initially properly and comprehensively raised, briefed, and argued, under the law as it existed at that time.

¶53   As the majority notes, the district court ruled from the bench at the conclusion of the argument, and granted UDOT's motion, determining that the "permit exception" (and the "inspection exception") applied because there was a sufficiently strong causal relationship between UDOT's grant of the permit (and its inspections thereunder) and the Trues' injuries.

¶54   On June 12, 2015, the very next day after oral argument, our supreme court issued its opinion in *Barneck*, ratcheting up the level of causal connection required in order for the Act's exception provisions (such as the permit exception) to apply. The district court did not sign its summary judgment order dismissing the claims against UDOT until July 29, 2015, and because the Trues possessed claims against other parties in the case that were not finally adjudicated until July 20, 2016, some thirteen months elapsed between the issuance of *Barneck* and the issuance of a final appealable order in the case.

¶55   The majority appears to fault the Trues for failing, during that thirteen-month period, to bring the matter back to the attention of the district court by way of a motion for reconsideration. *See supra* ¶¶ 36, 39 & n.5. Indeed, the majority's ruling in this case would seem to establish a requirement that, if the law changes between the time a district court issues an oral ruling and the time the court's order memorializing that ruling becomes final, it is incumbent upon the party affected by the change in the law to bring a motion to reconsider during that intervening period, and if the party fails to do so, it will not be considered to have done enough to preserve the entire changed legal issue for appellate review. In my view, such a rule is problematic, for a number of reasons.

¶56   First, "issues" are what must be preserved, not arguments in support of an issue or citations to legal authority supporting an issue.[7] *See Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 (stating that "[*i*]*ssues* must be preserved, not arguments for or against a particular ruling on an issue raised below"); Utah R. App. P. 24(a)(5)(B) (requiring appellate briefs to contain "citation to the record showing that the *issue* was preserved for review" (emphasis added)); *see also Bagley v. Bagley*, 2016 UT 48, ¶ 26, 387 P.3d 1000 (stating that parties are allowed to "offer[] a[] [new] argument in support of a particular issue already preserved on appeal"); *Torian v. Craig*, 2012 UT 63, ¶ 20, 289 P.3d 479 (stating that "a litigant has no obligation to 'preserve' his citation to legal authority," and that "if the foundation of a claim or argument is presented in a manner that allows the district court to rule on it, a party challenging the lower court's resolution of that matter is free to marshal any legal authority that may be relevant to its consideration on appeal" (quotation simplified)). I would define

---

7. I acknowledge that our supreme court, in *Patterson*, expressly refused to "draw a distinction between 'issues' and 'arguments' when determining whether to apply our preservation rule," and stated that the terms "issue," "argument," "claim," and "matter" were more or less interchangeable. *See Patterson v. Patterson*, 2011 UT 68, ¶ 14, 266 P.3d 828. Yet less than two years later, the supreme court drew just such a distinction in *Gressman*, when it stated that "[*i*]*ssues* must be preserved, not arguments for or against a particular ruling on an issue raised below," *Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998, and then the court repeated that same quotation from *Gressman* just last year in *State v. Garcia*, 2017 UT 53, ¶ 51. In determining what to make of these seemingly inconsistent statements from our supreme court, I am compelled to favor the more recent statements over the older ones. *See, e.g., State v. Aleh*, 2015 UT App 195, ¶ 18 n.2, 357 P.3d 12 (analyzing apparently inconsistent Utah Supreme Court cases, and relying on the more recent cases).

the "issue" more broadly than does the majority: in my view, the relevant "issue" is whether UDOT is immune from suit under the Act's "permit exception." That issue was squarely and robustly raised before the district court, and the district court made a ruling on that issue.[8] With the issue thus defined, it necessarily follows that the Trues properly preserved the issue in the district court. In my view, it also necessarily follows that the causation principles discussed in *Barneck* were not "'an entirely distinct legal theory,'" *see supra* ¶ 32 (quoting *Johnson*, 2017 UT 76, ¶ 14 n.2), but, rather, were simply arguments that could have been offered in support of the issue raised. Indeed, this conclusion is practically compelled by the majority's proposed solution to the perceived problem: to require the Trues (and similarly situated parties) to file a motion to reconsider in the event that the law changes in the time between the district court's oral ruling and the entry of final judgment. One does not *re*-consider an issue that has not already been considered.

¶57 Second, appellate courts are certainly capable of grappling with the implications of a change in the governing law that occurs after the district court has made its ruling. That is, there exist no insurmountable practical problems with allowing parties to proceed on appeal even where the governing law has changed since the issue was presented to the district court. For

---

8. The majority asserts that I am "recrafting the issue" in order "to reach the merits." *See supra* ¶ 32 & n.4. In response, I simply point out that the summary judgment motion granted by the district court was titled "UDOT's Motion for Summary Judgment No. 2 Re: Permit Immunity," and that UDOT devoted its entire memorandum to arguing that it was immune from suit under the Act's "permit exception." Neither I nor the majority is doing any "recrafting"; rather, we simply have a disagreement about how broadly one should define the "issue" presented for the district court's consideration.

instance, if the change in the law occurs *after* the notice of appeal is filed, appeals proceed normally, and there has never been any suggestion, in such a case, that the matter should be returned to the district court so that the district court could consider the matter anew in light of the change in the governing law. *See*, *e.g.*, *Patterson*, 2011 UT 68, ¶ 18 & n.7 (observing that appellate courts "routinely consider new authority relevant to issues that have properly been preserved," and stating that "we have always allowed parties to supplement an argument with new cases or relevant legislative history that they did not raise in the district court"). Indeed, our rules of appellate procedure specifically contemplate situations where a party to an appeal may, for various reasons, need to bring new authority to the appellate court's attention after briefing or oral argument but before an appellate court has issued its decision. *See* Utah R. App. P. 24(j) ("When authority of central importance to an issue comes to the attention of a party after briefing or oral argument but before decision, that party may file a notice of supplemental authority."). In this case, if *Barneck* had been issued after the filing of a notice of appeal (rather than while the case was still pending before the district court), I suspect that UDOT would not even have argued that the issue was unpreserved. But there is no practical reason—at least not one related to the capability of appellate courts to consider such an issue—that counsels in favor of treating the Trues' situation any differently.

¶58    Third, I see line-drawing problems with the majority's resolution of the preservation issue, which problems may not be present here but will undoubtedly be present in future cases. There are, to be sure, aspects of this case that could give a person reason to question the Trues' decision not to bring the matter back to the attention of the district court after *Barneck*. After all, under the unique circumstances of this case, they had thirteen months to do so, and thirteen months is a long time. Moreover, the change in the law articulated by *Barneck* was a fairly clear

one. But these factors present in the Trues' situation will not always be so clearly present in other cases.

¶59 The first line-drawing problem I perceive is a temporal one. A party who is given thirteen months to bring the matter back to the district court for reconsideration is certainly capable, as a practical matter, of doing so. But what about a party who is given two months? One month? Two weeks? One week? One day? At some point, a party will not have enough time to bring a motion to reconsider, let alone have that motion adjudicated, before final judgment enters.[9] I see no way to draw a temporal line that makes any principled sense, and I do not think we should engage in the effort. I would much rather fall back to a clear line that is defensible on something other than an ad hoc basis.

¶60 The second line-drawing problem I perceive is a legal one, involving the definition of what would be considered a "change in the law" momentous enough to require the filing of a motion to reconsider, as distinguished from minor statutory or common-law tweaks that have little effect on the litigation of a case and would not, even under the majority's analysis, present a preservation problem. Diligent attorneys who might not be certain where that line might lie will have no choice but to pre-

---

9. In cases where a party may not have enough time to file a motion to reconsider before final judgment enters, the majority's requirement would compel parties to file a post-judgment motion to reconsider, motions that our supreme court has referred to as "the cheatgrass of the litigation landscape." *Shipman v. Evans*, 2004 UT 44, ¶ 18 n.5, 100 P.3d 1151, *abrogated on other grounds by Utahns for Better Dental Health-Davis, Inc. v. Davis County Clerk*, 2007 UT 97, ¶ 6, 175 P.3d 1036. We ought not be imposing requirements that may encourage the additional filing of such motions.

emptively file motions for reconsideration, because failure to do so might result in loss of the right to appeal an issue. We should not create requirements that incentivize the filing of additional motions to reconsider.

¶61 When applying our prudential, discretionary doctrine of preservation, we should err in close cases—if err we must—on the side of allowing parties to bring claims and on the side of adjudicating claims on their merits. Accordingly, I think it an unwise exercise of our discretion to require parties to file motions to reconsider in order to preserve issues that have been squarely presented to the district court under the law in effect at the time those issues were briefed, argued, and decided. I do not think that the Trues had an obligation to file any such motion, and in my view the Trues did everything they needed to do in order to preserve the issue for appellate review. I would therefore reach the merits of the question presented.

II

¶62 On the merits of the governmental immunity question, in my view the district court correctly ruled that UDOT is immune from the Trues' lawsuit based on the Act's immunity-invoking exceptions.

A

¶63 The Act, as formulated in 2009,[10] stated as a general proposition that "each governmental entity and each employee

---

10. The parties agree that the 2009 version of the Act governs the outcome of this case. In 2015, the legislature amended and recodified the relevant provisions of the Act. Governmental Immunity Act Amendments, ch. 342, § 3, 2015 Utah Laws 1868, 1868–71. We are not asked to determine whether the outcome of

(continued…)

of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." Utah Code Ann. § 63G-7-201(1) (LexisNexis 2008). However, the Act waives governmental immunity in certain circumstances, and some of the waivers contain exceptions. Thus, in cases where a governmental entity asserts that it is immune from suit pursuant to the Act, we apply a three-part test to determine whether immunity exists. *Thayer v. Washington County School Dist.*, 2012 UT 31, ¶ 8, 285 P.3d 1142. First, we examine "whether the activity undertaken is a governmental function." *Id.* (quotation simplified). Second, we determine "whether governmental immunity was waived for the particular activity." *Id.* (quotation simplified). Finally, we look to see whether immunity has been reinstated through a statutory exception to the immunity waiver. *Id.*

¶64 As the majority recognizes, *supra* ¶ 16, both parties acknowledge that the first two steps are met here, because the activity undertaken is a governmental function, and because the Trues accuse UDOT of negligent conduct, a category of conduct for which governmental immunity is generally waived. *See* Utah Code Ann. § 63G-7-301(4) (LexisNexis 2008) (stating that "[i]mmunity from suit . . . is waived as to any injury proximately caused by a negligent act"). The operative question in the case, then, is whether immunity has been reinstated by way of a statutory exception to the immunity waiver for negligent conduct.

¶65 UDOT asserts that the permit exception applies here, pursuant to which immunity from suit is not waived—or, is reinstated—"if the injury arises out of, in connection with, or

---

(…continued)
this case would have been different under the current version of the Act.

results from . . . the issuance, denial, suspension, or revocation of . . . any permit, license, certificate, approval, order, or similar authorization." *Id.* § 63G-7-301(5)(c).[11] As the majority notes, the causal link language ("arises out of, in connection with, or results from") in the statute was, until the issuance of *Barneck*, construed as requiring only but-for causation. *See, e.g.*, *Hoyer v. State*, 2009 UT 38, ¶ 32, 212 P.3d 547. In *Barneck*, however, our supreme court "repudiated the language of some of [its] prior decisions" and held that "an immunity-invoking condition" (such as the issuance of a permit or license) "must be a *proximate* cause of the plaintiff's injuries in order to sustain the reinstatement of immunity." *See Barneck*, 2015 UT 50, ¶ 38. Accordingly, after *Barneck*, the dispositive question in the case is whether UDOT's conduct associated with its issuance of the permit, and with its inspections conducted thereunder, was a proximate cause of the Trues' injuries. In my view, that dispositive question must be answered in the affirmative.

¶66 UDOT's involvement in this matter began in May 2009 when it issued a formal permit allowing the project contractor to begin road work on the state highway in question. Indeed, the Trues conceded, at the district court, that there was no evidence that the state highway was unsafe before the construction project

---

11. As discussed more fully below, the district court also ruled that a second immunity-invoking exception—the "inspection exception"—applied to at least some of the Trues' claims. Under that exception, UDOT is immune from suit if the Trues' injuries were proximately caused by UDOT's "failure to make an inspection or by making an inadequate or negligent inspection." *See* Utah Code Ann. § 63G-7-301(5)(d) (LexisNexis 2008). Under either exception, however, UDOT is immune from suit only if the Trues' injuries were proximately caused by the immunity-invoking condition. *See id.* § 63G-7-301(5); *see also Barneck v. Utah Dep't of Transp.*, 2015 UT 50, ¶ 38, 353 P.3d 140.

began. By issuing the permit, UDOT allowed the work to proceed, but it imposed a number of conditions and requirements upon the contractor, including the following: (a) that, before beginning any work, the contractor "shall notify" UDOT's permit inspector; (b) that commencement of the work "is understood to indicate that the [contractor] will comply with all [of UDOT's] instruction and regulations"; and (c) that UDOT may inspect the work at any time, with 48 hours' notice.

¶67 The Trues complain that UDOT was negligent by "approving an unsafe traffic control plan and then subsequently failing to make sure the plan was carried out." But UDOT correctly points out that its involvement in approving (or not approving) any traffic control plan for the project, or in following up by way of inspection to make sure that any such traffic control plan was in fact followed, was involvement that stemmed entirely from UDOT's permit and, specifically, from the authority it retained, pursuant to the terms of the permit, to inspect the work and to require the contractor to comply with UDOT's "instruction and regulations." UDOT's only involvement with this project was because of its permit. Everything UDOT did on this project was because of its role as permittor and inspector of the project. If a UDOT permit had not been required, UDOT would have had no involvement with this project whatsoever, and would not have been in a position to approve any traffic control plans.

¶68 The district court, on these facts, correctly determined that there was at least a "but-for" causal relationship between UDOT's permit and the Trues' injuries, and therefore the "permit exception" applied to render UDOT immune from suit. The Trues do not directly challenge this determination on appeal; instead, they rely upon the new "proximate cause" standard articulated by *Barneck*, and argue that proximate cause is not present here. Because it decided the matter prior to *Barneck*, the district court was not asked to consider whether a

causal link stronger than "but-for" causation existed on these facts. But I have no trouble reaching this conclusion on the undisputed facts set forth in the record.

¶69    This court has defined "[p]roximate cause" as "'that cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred.'" *Dee v. Johnson*, 2012 UT App 237, ¶ 4, 286 P.3d 22 (quoting *Bunker v. Union Pac. R.R.*, 114 P. 764, 775 (Utah 1911)). There are two components of "proximate cause": but-for causation, and foreseeability. *Id.* ¶ 5. (stating that "foreseeability is an element of proximate cause" (quotation simplified)); *see also* Model Utah Jury Instructions 2d (MUJI) CV209 (2016), https://www.utcourts.gov/resources/muji/inc_list. asp?action=showRule&id=2#209 [https://perma.cc/KV6J-LF4Q] (stating that the first element of "cause" is that "the person's act or failure to act produced the harm directly or set in motion events that produced the harm in a natural and continuous sequence," and that the second element of "cause" is that "the person's act or failure to act could be foreseen by a reasonable person to produce a harm of the same general nature").

¶70    The first element of proximate cause is unquestionably present here. As the district court determined, there is at least a "but-for" causal link between UDOT's issuance of the permit and the Trues' injuries. If UDOT had not issued the permit, the project would never have taken place, traffic would never have been diverted or controlled to facilitate the project, and the Trues' injuries would not have happened. As noted, the Trues do not mount any kind of serious argument that "but-for" causation is not present here.

¶71    But it is no less clear that foreseeability, and therefore proximate causation, is also present. UDOT's approval of any specific traffic control plan was given pursuant to its authority under the issued permit. In addition, UDOT's authority to inspect the premises to make sure that any traffic control plan it

approved was actually being followed was also authority that it possessed by virtue of its permit. It is certainly foreseeable, as a matter of law, that UDOT's actions in approving and monitoring traffic control plans pursuant to that permitting and inspection authority, if carried out negligently, might injure motorists whose traffic was affected by the control plan. Thus, in my view, both elements of proximate cause are present here, and the causal link between UDOT's permitting and inspection actions and the Trues' injuries is therefore strong enough to constitute "proximate cause," and not just "but-for" causation. *See Holmstrom v. C.R. England, Inc.*, 2000 UT App 239, ¶ 36, 8 P.3d 281 (stating that a cause is a "proximate cause" if it "played a substantial role in causing the [plaintiff's] injuries").

B

¶72     The Trues final argument is that the "permit exception" cannot apply here because UDOT's actions were not formal governmental actions. The Trues correctly assert that, in order for the "permit exception" to apply, two requirements must be met: authority and formality. *See Winkler v. Lemieux*, 2014 UT App 141, ¶ 9, 329 P.3d 849 (noting that there are two requirements for invocation of the "permit exception": "authority and formality"). The Trues "concede that UDOT had the statutory authority to approve the traffic control plan, monitor traffic control, restrict access to roads at the construction site, and supervise others at the site." They argue, however, that UDOT's actions were not sufficiently formal to meet the formality requirement. Their arguments are unpersuasive.

¶73     With regard to UDOT's decision to issue the permit in the first place, there is no question that the formality requirement is met. In this case, a permit from UDOT was required by statute before the contractor could "dig or excavate" on the state highway in question, *see* Utah Code Ann. § 72-7-102 (LexisNexis 2008), and UDOT had an institutional procedure for consideration and approval of requests for such permits. There is

no dispute, on the facts of this case, that UDOT considered and issued the permit pursuant to that formal procedure, or that the permit is a formal document bearing the signatures of UDOT officials. At a minimum, UDOT's issuance of the permit was a formal, official act.

¶74 The Trues argue, however, that UDOT's decisions after issuance of the permit—such as, for instance, approving and monitoring specific traffic control plans—were not formal enough to satisfy the formality requirement, but these arguments are unconvincing. In this case, the traffic control plan was created by a consultant, and was a three-page written document with maps and charts that called for the specific placement of signs, barrels, and other traffic control devices. Moreover, UDOT's approval of the plan was an act carried out pursuant to authority granted to UDOT by the terms of a formal written permit. In my view, UDOT's actions in approving this particular traffic control plan differ from governmental actions deemed potentially too informal to qualify for immunity pursuant to the "permit exception." *See, e.g.*, *Thayer*, 2012 UT 31, ¶¶ 4, 28 (determining that school administrators' approval of the use of a firearm in a school play was insufficiently formal); *Winkler*, 2014 UT App 141, ¶ 9 (stating that the record was "insufficient to support a legal conclusion that [a] flagger's [traffic] signal" was sufficiently formal).

¶75 Moreover, I do not need to grapple with the question of whether UDOT's alleged failure to monitor implementation of the approved traffic control plan was sufficiently formal, because the district court determined that UDOT enjoys immunity—on a ground other than the "permit exception"—from the Trues' claims that it failed to properly monitor traffic control plans for the construction site, and the Trues have failed to appeal that portion of the district court's ruling.

¶76 Under the Act, UDOT is also immune from suit if the Trues' injuries were proximately caused by UDOT's "failure to

make an inspection or making an inadequate or negligent inspection." *See* Utah Code Ann. § 63G-7-301(5)(d) (LexisNexis 2008). In addition to ruling that the "permit exception" applied to grant UDOT immunity from suit for claims related to the permit, the district court also determined that this "inspection exception" likewise applied to also grant UDOT immunity from suit for any "failure to properly monitor the traffic control to ensure it was being carried out in accordance with the traffic control plan." As the State correctly points out, the Trues do not challenge the district court's separate ruling that UDOT is immune from suit, pursuant to the "inspection exception," for claims regarding alleged failure to monitor traffic control. The Trues' failure to challenge the district court's independent ground for decision is fatal to their appeal of the district court's decision in this regard. *See State v. Roberts*, 2015 UT 24, ¶ 38, 345 P.3d 1226 (stating that an appellate court "will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds" (quotation simplified)). Accordingly, there is no further occasion to consider whether UDOT's alleged failure to properly monitor the implementation of traffic control plans at the construction site was sufficiently formal to meet the formality requirement of the "permit exception."

III

¶77 The district court's decision to grant UDOT's summary judgment motion on the basis of governmental immunity was correct, and should be affirmed. I do not reach that conclusion because I perceive any problem with preservation; indeed, in my view, the Trues did everything they needed to do in order to preserve the overarching issue for appellate review. On the merits of that issue, however, UDOT prevails as a matter of law. On that basis, I would affirm, and I therefore concur in the result reached by the majority opinion.

_____