2014 UT App 141

**Shelby WINKLER, Plaintiff
and Appellant,**

v.

**Robert LEMIEUX, State of Utah, and
Utah Department of Transportation,
Defendants and Appellees.**

**No. 20130130–CA.**

Court of Appeals of Utah.

June 19, 2014.

Gregory S. Wright, Attorney for Appellant.

Sean D. Reyes and Peggy E. Stone, Attorneys for Appellees.

Judge JOHN A. PEARCE authored this Memorandum Decision, in which Judges STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN concurred.

Memorandum Decision

PEARCE, Judge:

¶ 1 Shelby Winkler alleges that she was injured in a vehicle collision that occurred after an employee of the Utah Department of Transportation negligently allowed two cars travelling in opposite directions to use the same lane through a construction zone. Winkler, the driver of one of the cars, brought suit against the Utah Department of Transportation, the State of Utah, and the other driver.[1] The district court dismissed UDOT from the suit after ruling that UDOT was immune from liability under the Governmental Immunity Act of Utah.[2] We reverse the district court's ruling and remand for further proceedings.

¶ 2 Winkler was driving up Little Cottonwood Canyon when she encountered a UDOT work zone. UDOT had limited traffic to one of the two lanes in the work zone and was alternating the use of the open lane between eastbound and westbound vehicles. A UDOT employee, referred to as a flagger, was tasked with controlling eastbound access to the work zone, while another UDOT employee apparently controlled westbound access. The flagger initially stopped Winkler before signaling that she could enter the work zone and drive east in the open lane. While Winkler was traversing the work zone, a westbound vehicle driven by Robert Lemieux struck her vehicle head on.

¶ 3 Winkler brought negligence claims against UDOT and the other driver. UDOT moved to dismiss the claims against it, arguing that it was exempt from liability under the Governmental Immunity Act of Utah. *See generally* Utah Code Ann. §§ 63G–7–101 to –904 (LexisNexis 2011 & Supp.2013). After oral argument, the district court agreed, ruling that "the licensing exception to the waiver [of governmental immunity] is in force

here." Accordingly, the district court dismissed UDOT as a defendant.

¶ 4 On appeal, Winkler contends that the district court erred by dismissing UDOT, because the flagger's instruction to Winkler to use the open lane did not constitute the issuance of an approval or authorization within the meaning of the Act. "[A] district court's dismissal of a case based on governmental immunity is a determination of law that we afford no deference. We review such conclusions for correctness." *Wheeler v. McPherson*, 2002 UT 16, ¶ 9, 40 P.3d 632 (citations omitted).

¶ 5 We typically apply a three-part test to determine whether a governmental entity enjoys immunity under the Act for the challenged activity. *Thayer v. Washington County Sch. Dist.*, 2012 UT 31, ¶ 8, 285 P.3d 1142. "The test assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Id.* (citation and internal quotation marks omitted).

¶ 6 In this case, the parties agree that the first two inquiries are not at issue. The flagger's signal to Winkler to travel through the construction zone was a governmental function. *See* Utah Code Ann. § 63G–7–102(4) (LexisNexis 2011). Governmental immunity for the flagger's activity is therefore waived, unless an exception applies, because we accept as true Winkler's allegation that the flagger's negligence caused the accident. *See id.* § 63G–7–301(4) (waiving governmental immunity for an employee's negligent acts committed within the scope of employment, subject to certain exceptions); *Horton v. Royal Order of the Sun*, 821 P.2d 1167, 1167–68 (Utah 1991) ("In deciding whether the trial court properly dismissed the action . . ., we accept the factual allegations of the complaint as true and consider them and all

---

1. Although other defendants were initially named, those defendants have since been dismissed and are not party to this appeal.

2. Because the State is involved in this case only through UDOT, and because the State and UDOT filed a single brief with coextensive arguments, we refer to them as a single entity—UDOT—throughout.

reasonable inferences drawn therefrom in a light most favorable to [the] plaintiff.").

■ ¶ 7 The parties disagree about the third part of the test, which considers whether one of twenty-one enumerated exceptions applies.[3] The district court determined that the so-called Licensing Exception insulated UDOT's alleged negligence from suit. *See* Utah Code Ann. § 63G–7–301(5)(c). The Licensing Exception provides that governmental immunity is not waived for injuries resulting from "the issuance, denial, suspension, or revocation of ... any permit, license, certificate, approval, order, or similar authorization." *Id.*

¶ 8 The Utah Supreme Court most recently addressed the Licensing Exception in *Thayer v. Washington County School District*, 2012 UT 31, 285 P.3d 1142. There, a school administrator, apparently swayed by pleas for verisimilitude in a high school production of *Oklahoma!*, allowed the theater department to use a .38 caliber revolver, loaded with blanks, and subject to several safety precautions. *Id.* ¶¶ 3–4. Despite the precautions, a student died when the gun discharged in unclear circumstances. *Id.* ¶ 5. The supreme court held that the high school was not immune from suit because the school administrator's consent "was not a formal, official authorization by a governmental body ... endowed with regulatory power to issue such an authorization." *Id.* ¶ 28.

¶ 9 The supreme court set forth two elements that must be satisfied for the Licensing Exception to apply—authority and formality. *Id.* ¶¶ 13–14, 28. Here, the application of those elements requires us to determine whether the flagger's signal (1) was an authorization UDOT possessed the regulatory power to issue and (2) can be properly characterized as a formal, official act.

■ ¶ 10 In *Thayer*, the Utah Supreme Court reasoned that a "governmental entity ... cannot issue an authorization ... unless it has the power to give legal authority" and that such power can only vest in the entity via "legislative or executive enactment." *Id.* ¶ 17 (brackets and internal quotation marks omitted). Put another way, the Licensing Exception only applies to a governmental entity's grant of authorization when that entity has been expressly empowered to give legal authority to those seeking such authorization. *Id.* ¶ 18.[4]

¶ 11 UDOT possessed the legal authority to restrict travel in its construction zones. Section 72–6–114(1) of the Utah Code provides that a "highway authority may close or restrict travel on a highway under their jurisdiction due to construction, maintenance work, or emergency." Logically, a closure may be partial, and a restriction may include alternating the direction of travel along a lane that remains open. We therefore conclude that UDOT has statutory authority to close lanes, to restrict access to the resulting work zones, and to allow members of the public to travel through those work zones. Thus, the flagger's signal was within UDOT's regulatory power.

¶ 12 We next consider whether the flagger's signal was a formal, official government action. In *Thayer*, the Utah Supreme Court held that the decision to allow the use of a firearm in the school play "was not a formal, official authorization." 2012 UT 31, ¶ 28, 285 P.3d 1142. To reach that conclusion, the supreme court examined the Licensing Exception's use of the terms " '[i]ssuance, denial, suspension, [and] revocation' " and concluded that "each word describes *a formal action* undertaken as part of an entity's official power." *Id.* ¶¶ 13–14 (emphasis added); *see also id.* ¶ 18 ("We hold that the Licensing Exception uses terms reflecting formality, official action, and authorization."). *But see*

3. Since the events giving rise to this case, our legislature has amended the statute to add a twenty-second exception. *See* H.B. 293, 60th Leg. (Utah 2014) (providing that immunity is not waived for injuries arising from the use of a public or private road and related to certain wildlife activities). That exception is not at issue here.

4. The *Thayer* court also held that the Licensing Exception did not apply to "a governmental entity's internal approval or authorization of an employee's negligent conduct." *Thayer v. Washington County Sch. Dist.*, 2012 UT 31, ¶ 11, 285 P.3d 1142. Although the parties mention that aspect of *Thayer*'s holding in their briefs, we need not examine that proposition to reach our decision.

*id.* ¶ 41 (Lee, J., dissenting) (arguing that the common feature of the types of authorization listed in the Licensing Exception is not formality of process but functional effect). There is yet no bright-line rule that divides informal authorizations from formal ones. *See id.* ¶ 33 (Lee, J., dissenting) (noting that the majority opinion "limit[s] the statute to those authorizations issued by the government with a sufficient (but undefined) degree of formality").

¶ 13 Wherever the precise boundary between formality and informality may lie, we know that the authorization to use the firearm at issue in *Thayer* lacked the formality necessary to allow the governmental entity to invoke the Licensing Exception. In *Thayer*, the school's theater instructor consulted the police officer assigned to the school. The officer agreed to allow the gun on campus subject to three safety conditions. The officer then approached the school administrator and informed him of the firearm request and the conditions the officer had imposed. The school administrator agreed with the officer's decision and "authorized use of the gun during the production, subject to the conditions." *Id.* ¶¶ 3–4.

¶ 14 Here, the record before us is insufficient to support a legal conclusion that the flagger's signal possessed even the level of formality that *Thayer* found insufficient. The proceedings below did not focus on whether any formality surrounded the flagger's decision to signal.[5] The record thus does not reveal whether the signal stemmed from any institutional procedure that might have imparted formality to it. Certainly, the parties have not directed us to anything in the record suggesting such formality. Given the record before us, we cannot conclude as a matter of law that the flagger's signal was a formal, official authorization.

¶ 15 The Licensing Exception applies when a governmental entity possesses regulatory power to issue an authorization and the authorization is formal and official. Because UDOT failed to demonstrate formality, we hold that the district court erred in ruling that UDOT's actions fell within the Licensing Exception to the Act's general waiver of immunity.

¶ 16 We reverse and remand for further proceedings.

5. UDOT's brief on appeal focuses almost exclusively on the authority prong and relies heavily on the same case that the district court appears to have read as suggesting that an authorization need not be formal for the Licensing Exception to apply—*Moss v. Pete Suazo Utah Athletic Commission*, 2007 UT 99, 175 P.3d 1042. In *Moss*, the Utah Supreme Court held that the "broad" language of the exception "certainly is not restricted to those decisions that constitute licensing decisions per se. Rather, it extends to approvals and similar authorizations...." *Id.* ¶ 15. *Moss*, which was decided five years before *Thayer*, did not focus on the formality of the governmental entity's decisions and therefore did not recite the facts that would provide insight into the level of formality that accompanied those decisions.