HARRIS, Judge (concurring):
¶ 50 I share my colleagues' view that the district court correctly entered summary judgment in UDOT's favor, and therefore agree that the district court's judgment should be affirmed. However, I reach that conclusion for different reasons. In my view, the Trues properly preserved for appellate review the issue of whether UDOT is immune from suit pursuant to the Utah Governmental Immunity Act's (the Act) "permit exception," and we ought to reach the merits of that issue. On the merits, however, UDOT has the better of the arguments. I would therefore affirm on the merits, rather than on the basis that the issue is unpreserved.
I
¶ 51 As the majority opinion recognizes, "[o]ur preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction." Patterson v. Patterson , 2011 UT 68, ¶ 13, 266 P.3d 828. As a result, appellate courts have "wide discretion" when determining whether to consider a matter preserved for appellate review. Id. In exercising this discretion, we must "balance the need for procedural regularity with the demands of fairness." State v. Johnson , 2017 UT 76, ¶ 12, 416 P.3d 443 (quotation simplified). In my view, under the circumstances of this case, we should not exercise that discretion to close the appellate courthouse door to the Trues.
¶ 52 UDOT filed its motion for summary judgment regarding governmental immunity in March 2015. At that time, Barneck had not yet been decided and, as the majority acknowledges, supra ¶ 18, "a but-for causal connection [was] sufficient to trigger a statutory reinstatement of immunity under an exception provision" of the Act. Barneck v. Utah Dep't of Transp. , 2015 UT 50, ¶ 39, 353 P.3d 140 (citing, among other cases, Hoyer v. State , 2009 UT 38, ¶ 32, 212 P.3d 547 ). Because the governing case law, at the time, called for analysis of whether a "but-for causal connection" existed, the parties briefed the issue with that rule in mind. The parties appeared for oral argument on June 11, 2015, and presented the issue to the district court in the same way they had argued it in the briefs. Everyone here involved-apparently even including UDOT and the majority-appears to agree that the issue was initially properly and comprehensively raised, briefed, and argued, under the law as it existed at that time.
¶ 53 As the majority notes, the district court ruled from the bench at the conclusion of the argument, and granted UDOT's motion, determining that the "permit exception" (and the "inspection exception") applied because there was a sufficiently strong causal relationship between UDOT's grant of the permit (and its inspections thereunder) and the Trues' injuries.
¶ 54 On June 12, 2015, the very next day after oral argument, our supreme court issued its opinion in Barneck , ratcheting up the level of causal connection required in order for the Act's exception provisions (such as the permit exception) to apply. The district court did not sign its summary judgment order dismissing the claims against UDOT until July 29, 2015, and because the Trues possessed claims against other parties in the case that were not finally adjudicated until July 20, 2016, some thirteen months elapsed between the issuance of Barneck and the issuance of a final appealable order in the case.
¶ 55 The majority appears to fault the Trues for failing, during that thirteen-month period, to bring the matter back to the attention of the district court by way of a motion *352 for reconsideration. See supra ¶¶ 36, 39 & n.5. Indeed, the majority's ruling in this case would seem to establish a requirement that, if the law changes between the time a district court issues an oral ruling and the time the court's order memorializing that ruling becomes final, it is incumbent upon the party affected by the change in the law to bring a motion to reconsider during that intervening period, and if the party fails to do so, it will not be considered to have done enough to preserve the entire changed legal issue for appellate review. In my view, such a rule is problematic, for a number of reasons.
¶ 56 First, "issues" are what must be preserved, not arguments in support of an issue or citations to legal authority supporting an issue.[7] See Gressman v. State , 2013 UT 63, ¶ 45, 323 P.3d 998 (stating that "[i ]ssues must be preserved, not arguments for or against a particular ruling on an issue raised below"); Utah R. App. P. 24(a)(5)(B) (requiring appellate briefs to contain "citation to the record showing that the issue was preserved for review" (emphasis added) ); see also Bagley v. Bagley , 2016 UT 48, ¶ 26, 387 P.3d 1000 (stating that parties are allowed to "offer[ ] a[ ] [new] argument in support of a particular issue already preserved on appeal"); Torian v. Craig , 2012 UT 63, ¶ 20, 289 P.3d 479 (stating that "a litigant has no obligation to 'preserve' his citation to legal authority," and that "if the foundation of a claim or argument is presented in a manner that allows the district court to rule on it, a party challenging the lower court's resolution of that matter is free to marshal any legal authority that may be relevant to its consideration on appeal" (quotation simplified) ). I would define the "issue" more broadly than does the majority: in my view, the relevant "issue" is whether UDOT is immune from suit under the Act's "permit exception." That issue was squarely and robustly raised before the district court, and the district court made a ruling on that issue.[8] With the issue thus defined, it necessarily follows that the Trues properly preserved the issue in the district court. In my view, it also necessarily follows that the causation principles discussed in Barneck were not " 'an entirely distinct legal theory,' " see supra ¶ 32 (quoting Johnson , 2017 UT 76, ¶ 14 n.2, 416 P.3d 443 ), but, rather, were simply arguments that could have been offered in support of the issue raised. Indeed, this conclusion is practically compelled by the majority's proposed solution to the perceived problem: to require the Trues (and similarly situated parties) to file a motion to reconsider in the event that the law changes in the time between the district court's oral ruling and the entry of final judgment. One does not re -consider an issue that has not already been considered.
¶ 57 Second, appellate courts are certainly capable of grappling with the implications of a change in the governing law that occurs after the district court has made its ruling. That is, there exist no insurmountable practical problems with allowing parties to proceed on appeal even where the governing law has changed since the issue was presented to the district court. For instance, if the change in the law occurs after the notice of appeal is *353 filed, appeals proceed normally, and there has never been any suggestion, in such a case, that the matter should be returned to the district court so that the district court could consider the matter anew in light of the change in the governing law. See , e.g. , Patterson , 2011 UT 68, ¶ 18 & n.7, 266 P.3d 828 (observing that appellate courts "routinely consider new authority relevant to issues that have properly been preserved," and stating that "we have always allowed parties to supplement an argument with new cases or relevant legislative history that they did not raise in the district court"). Indeed, our rules of appellate procedure specifically contemplate situations where a party to an appeal may, for various reasons, need to bring new authority to the appellate court's attention after briefing or oral argument but before an appellate court has issued its decision. See Utah R. App. P. 24(j) ("When authority of central importance to an issue comes to the attention of a party after briefing or oral argument but before decision, that party may file a notice of supplemental authority."). In this case, if Barneck had been issued after the filing of a notice of appeal (rather than while the case was still pending before the district court), I suspect that UDOT would not even have argued that the issue was unpreserved. But there is no practical reason-at least not one related to the capability of appellate courts to consider such an issue-that counsels in favor of treating the Trues' situation any differently.
¶ 58 Third, I see line-drawing problems with the majority's resolution of the preservation issue, which problems may not be present here but will undoubtedly be present in future cases. There are, to be sure, aspects of this case that could give a person reason to question the Trues' decision not to bring the matter back to the attention of the district court after Barneck . After all, under the unique circumstances of this case, they had thirteen months to do so, and thirteen months is a long time. Moreover, the change in the law articulated by Barneck was a fairly clear one. But these factors present in the Trues' situation will not always be so clearly present in other cases.
¶ 59 The first line-drawing problem I perceive is a temporal one. A party who is given thirteen months to bring the matter back to the district court for reconsideration is certainly capable, as a practical matter, of doing so. But what about a party who is given two months? One month? Two weeks? One week? One day? At some point, a party will not have enough time to bring a motion to reconsider, let alone have that motion adjudicated, before final judgment enters.[9] I see no way to draw a temporal line that makes any principled sense, and I do not think we should engage in the effort. I would much rather fall back to a clear line that is defensible on something other than an ad hoc basis.
¶ 60 The second line-drawing problem I perceive is a legal one, involving the definition of what would be considered a "change in the law" momentous enough to require the filing of a motion to reconsider, as distinguished from minor statutory or common-law tweaks that have little effect on the litigation of a case and would not, even under the majority's analysis, present a preservation problem. Diligent attorneys who might not be certain where that line might lie will have no choice but to pre-emptively file motions for reconsideration, because failure to do so might result in loss of the right to appeal an issue. We should not create requirements that incentivize the filing of additional motions to reconsider.
¶ 61 When applying our prudential, discretionary doctrine of preservation, we should err in close cases-if err we must-on the side of allowing parties to bring claims and on the side of adjudicating claims on their merits. Accordingly, I think it an unwise exercise of our discretion to require parties to file motions to reconsider in order to *354 preserve issues that have been squarely presented to the district court under the law in effect at the time those issues were briefed, argued, and decided. I do not think that the Trues had an obligation to file any such motion, and in my view the Trues did everything they needed to do in order to preserve the issue for appellate review. I would therefore reach the merits of the question presented.
II
¶ 62 On the merits of the governmental immunity question, in my view the district court correctly ruled that UDOT is immune from the Trues' lawsuit based on the Act's immunity-invoking exceptions.
A
¶ 63 The Act, as formulated in 2009,[10] stated as a general proposition that "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." Utah Code Ann. § 63G-7-201(1) (LexisNexis 2008). However, the Act waives governmental immunity in certain circumstances, and some of the waivers contain exceptions. Thus, in cases where a governmental entity asserts that it is immune from suit pursuant to the Act, we apply a three-part test to determine whether immunity exists. Thayer v. Washington County School Dist. , 2012 UT 31, ¶ 8, 285 P.3d 1142. First, we examine "whether the activity undertaken is a governmental function." Id. (quotation simplified). Second, we determine "whether governmental immunity was waived for the particular activity." Id. (quotation simplified). Finally, we look to see whether immunity has been reinstated through a statutory exception to the immunity waiver. Id.
¶ 64 As the majority recognizes, supra ¶ 16, both parties acknowledge that the first two steps are met here, because the activity undertaken is a governmental function, and because the Trues accuse UDOT of negligent conduct, a category of conduct for which governmental immunity is generally waived. See Utah Code Ann. § 63G-7-301(4) (LexisNexis 2008) (stating that "[i]mmunity from suit ... is waived as to any injury proximately caused by a negligent act"). The operative question in the case, then, is whether immunity has been reinstated by way of a statutory exception to the immunity waiver for negligent conduct.
¶ 65 UDOT asserts that the permit exception applies here, pursuant to which immunity from suit is not waived-or, is reinstated-"if the injury arises out of, in connection with, or results from ... the issuance, denial, suspension, or revocation of ... any permit, license, certificate, approval, order, or similar authorization." Id. § 63G-7-301(5)(c).[11] As the majority notes, the causal link language ("arises out of, in connection with, or results from") in the statute was, until the issuance of Barneck , construed as requiring only but-for causation. See, e.g. , Hoyer v. State , 2009 UT 38, ¶ 32, 212 P.3d 547. In Barneck , however, our supreme court "repudiated the language of some of [its] prior decisions" and held that "an immunity-invoking condition" (such as the issuance of a permit or license) "must be a proximate cause of the plaintiff's injuries in order to sustain the reinstatement of immunity." See Barneck , 2015 UT 50, ¶ 38, 353 P.3d 140. Accordingly, after Barneck , the dispositive question in the case is whether UDOT's conduct associated with its issuance of the permit, and with its inspections conducted *355 thereunder, was a proximate cause of the Trues' injuries. In my view, that dispositive question must be answered in the affirmative.
¶ 66 UDOT's involvement in this matter began in May 2009 when it issued a formal permit allowing the project contractor to begin road work on the state highway in question. Indeed, the Trues conceded, at the district court, that there was no evidence that the state highway was unsafe before the construction project began. By issuing the permit, UDOT allowed the work to proceed, but it imposed a number of conditions and requirements upon the contractor, including the following: (a) that, before beginning any work, the contractor "shall notify" UDOT's permit inspector; (b) that commencement of the work "is understood to indicate that the [contractor] will comply with all [of UDOT's] instruction and regulations"; and (c) that UDOT may inspect the work at any time, with 48 hours' notice.
¶ 67 The Trues complain that UDOT was negligent by "approving an unsafe traffic control plan and then subsequently failing to make sure the plan was carried out." But UDOT correctly points out that its involvement in approving (or not approving) any traffic control plan for the project, or in following up by way of inspection to make sure that any such traffic control plan was in fact followed, was involvement that stemmed entirely from UDOT's permit and, specifically, from the authority it retained, pursuant to the terms of the permit, to inspect the work and to require the contractor to comply with UDOT's "instruction and regulations." UDOT's only involvement with this project was because of its permit. Everything UDOT did on this project was because of its role as permittor and inspector of the project. If a UDOT permit had not been required, UDOT would have had no involvement with this project whatsoever, and would not have been in a position to approve any traffic control plans.
¶ 68 The district court, on these facts, correctly determined that there was at least a "but-for" causal relationship between UDOT's permit and the Trues' injuries, and therefore the "permit exception" applied to render UDOT immune from suit. The Trues do not directly challenge this determination on appeal; instead, they rely upon the new "proximate cause" standard articulated by Barneck , and argue that proximate cause is not present here. Because it decided the matter prior to Barneck , the district court was not asked to consider whether a causal link stronger than "but-for" causation existed on these facts. But I have no trouble reaching this conclusion on the undisputed facts set forth in the record.
¶ 69 This court has defined "[p]roximate cause" as " 'that cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred.' " Dee v. Johnson , 2012 UT App 237, ¶ 4, 286 P.3d 22 (quoting Bunker v. Union Pac. R.R. , 38 Utah 575, 114 P. 764, 775 (1911) ). There are two components of "proximate cause": but-for causation, and foreseeability. Id. ¶ 5. (stating that "foreseeability is an element of proximate cause" (quotation simplified) ); see also Model Utah Jury Instructions 2d (MUJI) CV209 (2016), https://www.utcourts.gov/resources/muji/inc_list.asp?action=showRule & id=2#209 [https://perma.cc/KV6J-LF4Q] (stating that the first element of "cause" is that "the person's act or failure to act produced the harm directly or set in motion events that produced the harm in a natural and continuous sequence," and that the second element of "cause" is that "the person's act or failure to act could be foreseen by a reasonable person to produce a harm of the same general nature").
¶ 70 The first element of proximate cause is unquestionably present here. As the district court determined, there is at least a "but-for" causal link between UDOT's issuance of the permit and the Trues' injuries. If UDOT had not issued the permit, the project would never have taken place, traffic would never have been diverted or controlled to facilitate the project, and the Trues' injuries would not have happened. As noted, the Trues do not mount any kind of serious argument that "but-for" causation is not present here.
¶ 71 But it is no less clear that foreseeability, and therefore proximate causation, is also *356 present. UDOT's approval of any specific traffic control plan was given pursuant to its authority under the issued permit. In addition, UDOT's authority to inspect the premises to make sure that any traffic control plan it approved was actually being followed was also authority that it possessed by virtue of its permit. It is certainly foreseeable, as a matter of law, that UDOT's actions in approving and monitoring traffic control plans pursuant to that permitting and inspection authority, if carried out negligently, might injure motorists whose traffic was affected by the control plan. Thus, in my view, both elements of proximate cause are present here, and the causal link between UDOT's permitting and inspection actions and the Trues' injuries is therefore strong enough to constitute "proximate cause," and not just "but-for" causation. See Holmstrom v. C.R. England, Inc. , 2000 UT App 239, ¶ 36, 8 P.3d 281 (stating that a cause is a "proximate cause" if it "played a substantial role in causing the [plaintiff's] injuries").
B
¶ 72 The Trues final argument is that the "permit exception" cannot apply here because UDOT's actions were not formal governmental actions. The Trues correctly assert that, in order for the "permit exception" to apply, two requirements must be met: authority and formality. See Winkler v. Lemieux , 2014 UT App 141, ¶ 9, 329 P.3d 849 (noting that there are two requirements for invocation of the "permit exception": "authority and formality"). The Trues "concede that UDOT had the statutory authority to approve the traffic control plan, monitor traffic control, restrict access to roads at the construction site, and supervise others at the site." They argue, however, that UDOT's actions were not sufficiently formal to meet the formality requirement. Their arguments are unpersuasive.
¶ 73 With regard to UDOT's decision to issue the permit in the first place, there is no question that the formality requirement is met. In this case, a permit from UDOT was required by statute before the contractor could "dig or excavate" on the state highway in question, see Utah Code Ann. § 72-7-102 (LexisNexis 2008), and UDOT had an institutional procedure for consideration and approval of requests for such permits. There is no dispute, on the facts of this case, that UDOT considered and issued the permit pursuant to that formal procedure, or that the permit is a formal document bearing the signatures of UDOT officials. At a minimum, UDOT's issuance of the permit was a formal, official act.
¶ 74 The Trues argue, however, that UDOT's decisions after issuance of the permit-such as, for instance, approving and monitoring specific traffic control plans-were not formal enough to satisfy the formality requirement, but these arguments are unconvincing. In this case, the traffic control plan was created by a consultant, and was a three-page written document with maps and charts that called for the specific placement of signs, barrels, and other traffic control devices. Moreover, UDOT's approval of the plan was an act carried out pursuant to authority granted to UDOT by the terms of a formal written permit. In my view, UDOT's actions in approving this particular traffic control plan differ from governmental actions deemed potentially too informal to qualify for immunity pursuant to the "permit exception." See , e.g. , Thayer , 2012 UT 31, ¶¶ 4, 28, 285 P.3d 1142 (determining that school administrators' approval of the use of a firearm in a school play was insufficiently formal); Winkler , 2014 UT App 141, ¶ 9, 329 P.3d 849 (stating that the record was "insufficient to support a legal conclusion that [a] flagger's [traffic] signal" was sufficiently formal).
¶ 75 Moreover, I do not need to grapple with the question of whether UDOT's alleged failure to monitor implementation of the approved traffic control plan was sufficiently formal, because the district court determined that UDOT enjoys immunity-on a ground other than the "permit exception"-from the Trues' claims that it failed to properly monitor traffic control plans for the construction site, and the Trues have failed to appeal that portion of the district court's ruling.
¶ 76 Under the Act, UDOT is also immune from suit if the Trues' injuries were proximately caused by UDOT's "failure to make an inspection or making an inadequate or *357 negligent inspection." See Utah Code Ann. § 63G-7-301(5)(d) (LexisNexis 2008). In addition to ruling that the "permit exception" applied to grant UDOT immunity from suit for claims related to the permit, the district court also determined that this "inspection exception" likewise applied to also grant UDOT immunity from suit for any "failure to properly monitor the traffic control to ensure it was being carried out in accordance with the traffic control plan." As the State correctly points out, the Trues do not challenge the district court's separate ruling that UDOT is immune from suit, pursuant to the "inspection exception," for claims regarding alleged failure to monitor traffic control. The Trues' failure to challenge the district court's independent ground for decision is fatal to their appeal of the district court's decision in this regard. See State v. Roberts , 2015 UT 24, ¶ 38, 345 P.3d 1226 (stating that an appellate court "will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds" (quotation simplified) ). Accordingly, there is no further occasion to consider whether UDOT's alleged failure to properly monitor the implementation of traffic control plans at the construction site was sufficiently formal to meet the formality requirement of the "permit exception."
III
¶ 77 The district court's decision to grant UDOT's summary judgment motion on the basis of governmental immunity was correct, and should be affirmed. I do not reach that conclusion because I perceive any problem with preservation; indeed, in my view, the Trues did everything they needed to do in order to preserve the overarching issue for appellate review. On the merits of that issue, however, UDOT prevails as a matter of law. On that basis, I would affirm, and I therefore concur in the result reached by the majority opinion.

I acknowledge that our supreme court, in Patterson , expressly refused to "draw a distinction between 'issues' and 'arguments' when determining whether to apply our preservation rule," and stated that the terms "issue," "argument," "claim," and "matter" were more or less interchangeable. See Patterson v. Patterson , 2011 UT 68, ¶ 14, 266 P.3d 828. Yet less than two years later, the supreme court drew just such a distinction in Gressman , when it stated that "[i ]ssues must be preserved, not arguments for or against a particular ruling on an issue raised below,"Gressman v. State , 2013 UT 63, ¶ 45, 323 P.3d 998, and then the court repeated that same quotation from Gressman just last year in State v. Garcia , 2017 UT 53, ¶ 51, 424 P.3d 171. In determining what to make of these seemingly inconsistent statements from our supreme court, I am compelled to favor the more recent statements over the older ones. See, e.g. , State v. Aleh , 2015 UT App 195, ¶ 18 n.2, 357 P.3d 12 (analyzing apparently inconsistent Utah Supreme Court cases, and relying on the more recent cases).

The majority asserts that I am "recrafting the issue" in order "to reach the merits." See supra ¶ 32 & n.4. In response, I simply point out that the summary judgment motion granted by the district court was titled "UDOT's Motion for Summary Judgment No. 2 Re: Permit Immunity," and that UDOT devoted its entire memorandum to arguing that it was immune from suit under the Act's "permit exception." Neither I nor the majority is doing any "recrafting"; rather, we simply have a disagreement about how broadly one should define the "issue" presented for the district court's consideration.

In cases where a party may not have enough time to file a motion to reconsider before final judgment enters, the majority's requirement would compel parties to file a post-judgment motion to reconsider, motions that our supreme court has referred to as "the cheatgrass of the litigation landscape." Shipman v. Evans , 2004 UT 44, ¶ 18 n.5, 100 P.3d 1151, abrogated on other grounds by Utahns for Better Dental Health-Davis, Inc. v. Davis County Clerk , 2007 UT 97, ¶ 6, 175 P.3d 1036. We ought not be imposing requirements that may encourage the additional filing of such motions.

The parties agree that the 2009 version of the Act governs the outcome of this case. In 2015, the legislature amended and recodified the relevant provisions of the Act. Governmental Immunity Act Amendments, ch. 342, § 3, 2015 Utah Laws 1868, 1868-71. We are not asked to determine whether the outcome of this case would have been different under the current version of the Act.

As discussed more fully below, the district court also ruled that a second immunity-invoking exception-the "inspection exception"-applied to at least some of the Trues' claims. Under that exception, UDOT is immune from suit if the Trues' injuries were proximately caused by UDOT's "failure to make an inspection or by making an inadequate or negligent inspection." See Utah Code Ann. § 63G-7-301(5)(d) (LexisNexis 2008). Under either exception, however, UDOT is immune from suit only if the Trues' injuries were proximately caused by the immunity-invoking condition. See id. § 63G-7-301(5) ; see also Barneck v. Utah Dep't of Transp. , 2015 UT 50, ¶ 38, 353 P.3d 140.